GENERAL ELECTRIC COMPANY, a corporation, Plaintiff,

v.

ROSE INTERNATIONAL, INC., a corporation,. Defendant.

Civ. A. No. 79–0008.

United States District Court, W. D. Virginia, Roanoke Division.

Aug. 23, 1979.

Charles F. Barnett, Jr., Place, Thomas & Prillaman, Roanoke, Va., for plaintiff.

Penn, Stuart, Eskridge & Jones, White, Elliott, Bundy & Jones, Abingdon, Va., John H. Locke, Gentry, Locke, Rakes & Moore, Roanoke, Va., for defendant.

## MEMORANDUM OPINION

TURK, Chief Judge.

This action was brought by General Electric Company ("General Electric") against Rose International, Inc. ("Rose International") to recover amounts allegedly due under a purchase agreement entered into by the parties. Plaintiff is a corporation incorporated under the laws of New York and defendant is a Florida corporation having its principal place of business in a state

other than New York. The complaint invoked this court's diversity jurisdiction under Title 28 U.S.C. § 1332.

Process was served upon defendant by registered mail through the Secretary of the Commonwealth of Virginia in accordance with Virginia Code § 8.01–329, and personal jurisdiction over defendant was asserted under Virginia's long-arm statute, Virginia Code § 8.01–328.1. Thereafter defendant moved, under Rule 12(b)(2) and (5) of the Federal Rules of Civil Procedure, to dismiss the action for lack of personal jurisdiction and to quash service of process on the ground that its actions with respect to the purchase agreement did not constitute contact with the Commonwealth of Virginia sufficient to warrant this court's exercise of jurisdiction over it consistent with the due process clause of the Fourteenth Amendment.

The pertinent facts, as presented by the complaint and by affidavits and memoranda submitted by the parties, are for the most part undisputed. On February 5, 1976, General Electric received a phone call from one James Threlkeld, a manufacturer's representative whose office was in North Carolina, who represented himself as acting on behalf of the CSF/Fycon Division of Rose International.[1] Threlkeld, having learned through his contacts in the textile industry that General Electric planned to cease its synthetic fiber heating and control system operation, in this initial phone call discussed with James Tucker, General Electric's manager of the operation, the possibility of developing an arrangement whereby spare parts could be provided to customers who had the General Electric system. Learning of General Electric's possible interest in such an arrangement, Threlkeld thereafter contacted William Rose of Rose International, who expressed a similar interest.

At a subsequent meeting in Salem, Virginia between Threlkeld and Tucker on February 9, 1976,[2] Threlkeld learned that General Electric wished only to sell its entire synthetic fiber heating and control system operation and, at that same meeting, he reviewed financial data on terms for sale of the operation agreeable to General Electric which had been previously prepared by Tucker. This information was passed on to Rose International by Threlkeld for its further action, after which time Threlkeld dropped from the picture.

The information thus received by Rose International from Threlkeld prompted William Rose on March 8, 1976, to write to Tucker to express his assurance that "we would have a very strong interest in the business," and to request a meeting with Tucker. On April 1, 1976, Tucker met with Horst Asman, president of CSF/Fycon, and Chet Rinehults, general manager of CSF/Fycon, for approximately half a day at General Electric's Salem, Virginia facilities. Discussed at this meeting was a review of the status and nature of the system's assets that Rose International was interested in purchasing, along with the financial data previously presented to Threlkeld by Tucker at the February 9 meeting.

Following further conversation between General Electric and Rose International conducted by telephone, letter, and telegram, William Rose, by letter of April 9, 1976, submitted a proposal to purchase certain assets of General Electric's synthetic fiber heating and control systems operation. Further long distance negotiations resulted in the acceptance in Virginia by General Electric of a slightly modified version of Rose International's original proposal. Counsel for General Electric then drafted and mailed to Rose International a purchase agreement embodying the previously agreed to terms; further long distance negotiations produced the purchase agreement in its final form.

The agreement provided for the final closing of the transaction in Salem, Virginia

1. As is shown by Threlkeld's affidavit, Threlkeld at the time of this call had not previously discussed the General Electric system with Rose International.

2. This meeting was presumably arranged at the request of Rose International since its purpose was to discuss in concrete terms the possibility of Rose International's acquiring the previously mentioned spare part arrangement.

or at other such place as the parties might establish; for payment of the purchase price in installments payable at Salem, Virginia; and that the agreement and documents attached thereto were to be construed in accordance with the laws of Virginia. Schedules attached to the agreement provided for Rose International to take delivery of the assets involved at General Electric's Salem, Virginia plant and further provided that Rose International would bear all costs of crating, loading and shipping.

The agreement was executed by General Electric in Virginia and then delivered in Florida to Rose International by Tucker for its execution. In the month following the signing of the agreement, Rose International personnel met, in Salem, Virginia, with General Electric personnel on four occasions to take inventory of the assets purchased by Rose International and to discuss details of their transportation. During this same period, General Electric sales personnel introduced their counterparts from Rose International to General Electric's synthetic fiber heating and control systems world-wide clientelle.

Rose International took delivery of the operation's assets and of certain inventory relating thereto as specified in the agreement and made payments by mail to General Electric's office in Salem, Virginia under the agreement from December 1, 1976 through November 1, 1977. Rose International's alleged failure to make further payments after November of 1977 gave rise to this controversy.

■ Personal jurisdiction over the defendant was here achieved, if at all, pursuant to Rule 4(e) of the Federal Rules of Civil Procedure, and § 8.01–328.1 of the Virginia Code. § 8.01–328.1 provides, in pertinent part, as follows:

§ 8.01–328.1. *When personal jurisdiction over person may be exercised.—*

A. A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's

1. Transacting any business in this State;

The Virginia Supreme Court has indicated that § 8.01–328.1 permits the assertion of *in personam* jurisdiction to the full extent permissible under the due process clause of the Fourteenth Amendment. *John G. Kolbe, Inc. v. Chromodern Chair Co., Inc.,* 211 Va. 736, 180 S.E.2d 664, 667 (1971). If, accordingly, the assertion of personal jurisdiction in this case can withstand due process scrutiny, then such assertion must also be valid under § 8.01–328.1 and Rule 4(e), Fed.R. Civ.P.

■ The broad parameters of the required due process inquiry are well-settled. Where the person over whom jurisdiction is asserted has established "certain minimum contacts" with the forum such that requiring him to defend his interests in the forum would not "offend 'traditional notions of fair play and substantial justice,'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), and where he has "purposely avail[ed] [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws," *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958), jurisdiction will be upheld. *International Shoe* and its progeny have failed to enunciate a more mechanistic formula with which to test the assertion of jurisdiction; the resolution of each jurisdictional challenge, then, must ultimately turn on a quantitative and qualitative analysis of the contacts involved:

> Like any standard that requires a determination of "reasonableness," the "minimum contacts" test of *International Shoe* is not susceptible of mechanical application; rather, the facts of each case must be weighed to determine whether the requisite "affiliating circumstances" are present.

*Kulko v. Superior Court of California,* 436 U.S. 84, 92, 98 S.Ct. 1690, 1697, 56 L.Ed.2d 132 (1978) (citation omitted). It is, accordingly, to an analysis of the contacts of Rose International with the Commonwealth of Virginia in relation to the transaction at issue that the court now turns.

■ The court notes that defendant is not authorized to do business in Virginia,

sells no products in Virginia, has no office or facilities located herein, nor are any of its officers or directors domiciled in Virginia. Such a determination, however, will not operate to preclude the exercise of personal jurisdiction where other contacts with the forum state are present. *Whittaker Corporation v. United Aircraft Corporation*, 482 F.2d 1079 (1st Cir. 1973).

Defendant has contended that the passive buyer role it assumed in the transaction should preclude its being subjected to litigation in Virginia. Affidavits filed herein by both parties show that the initial contact with General Electric was made by Threlkeld acting, at that point in time, on his own behalf. Subsequent to this initial contact, however, Thelkeld met, in Virginia and at defendant's request, with General Electric personnel to discuss the possibility of defendant's acquiring a "spare parts arrangement." There is no indication that General Electric had solicited offers either for such an arrangement or for the eventual sale of the entire operation. As a direct result of discussion taking place during this meeting, Rose International offered to purchase plaintiff's synthetic fiber heating and control systems operation. Additionally, personnel from defendant's CSF/Fycon division toured plaintiff's Salem, Virginia facilities and gathered information looking towards a purchase of the operation. It is further not contested that Rose International played a vigorous role in the negotiations phase of the transaction.

██ While the courts have shown themselves more willing to assume jurisdiction over a non-resident seller than over a non-resident buyer,

> [t]o the extent the buyer vigorously negotiates, perhaps dictates, contract terms, inspects production facilities and otherwise departs from the passive buyer role it would seem that any unfairness which would normally be associated with the exercise of long-arm jurisdiction over him disappears.

*In Flight Devices Corporation v. Van Dusen Air, Inc.*, 466 F.2d 220, 233 (6th Cir. 1972). The sum total of defendant's activities leading to the purchase of certain General Electric assets and inventory serves to negate its protestations of passivity. Accordingly, the mere fact of defendant's buyer status cannot function to protect it from the reach of Virginia's long-arm.[3]

██ The courts have considered certain other factors to be relevant to the due process inquiry. Payment of the purchase price in the forum state has been noted as a pertinent contact, *United States Ry. Equipment Co. v. Port Huron & Detroit R. Co.*, 495 F.2d 1127, 1129 (7th Cir. 1974), as has the fact that delivery of the purchased goods was to occur in the forum state, *In Flight Device Corporation v. Van Dusen Air, Inc.*, 466 F.2d at 223. Both of these contacts are present in the instant case. A defendant has had relevant contact with the forum state by virtue of his having traveled there for inspection or negotiation purposes. *Whittaker Corporation v. United Aircraft Corporation*, 482 F.2d at 1082; *United States Ry. Equip. Co. v. Port Huron & Detroit R. Co.*, 495 F.2d at 1128. Rose International personnel visited General Electric facilities in Virginia on at least four occasions. Both the making of a substantial business contract, with attendant economic impact on the forum state, *In Flight Device Corporation v. Van Dusen Air, Inc.*, 466 F.2d at 220, and the fact that the agreement entered into was to be construed according to the law of the forum, *O'Hare International Bank v. Hampton*, 437 F.2d 1173, 1177 (7th Cir. 1971), have been noted to militate against the unfairness of subjecting a non-resident to litigation in the forum state. Each factor is present here.

It is the defendant's contention that its contacts with Virginia were "inconsequestial" in nature and that it cannot constitutionally be called upon to defend its interests in this state as a result. The uncontested history of contact between Rose In-

---

**3.** For another case in which the active role of a non-resident buyer was one factor operating to preclude insulation from long-arm jurisdiction merely on the basis of the buyer/seller distinction, *see, Whittaker Corporation v. United Aircraft Corporation*, 482 F.2d 1079 (1st Cir. 1973).

ternational and the Commonwealth of Virginia is dispositive of this contention.

The court does not mean to intimate that any one of these contacts would be either necessary or sufficient to sustain its exercise of personal jurisdiction over Rose International. Viewed in sum total, however, it is the court's opinion that these contacts have met the threshold "minimum contacts" requirement of *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and that the extension of jurisdiction over the defendant in this case does not violate those notions of fair play governing the due process guarantees of the Fourteenth Amendment.

This court's assumption of personal jurisdiction over the defendant in this case being consistent with due process and, thus, permissible under § 8.01–328.1 of the Code of Virginia, defendant's motion for dismissal for lack of jurisdiction and for quash of service of process is hereby DENIED.