Everett B. BOSTIC, Plaintiff,

v.

The OHIO RIVER COMPANY (OHIO DIVISION) BASIC PENSION PLAN, and Robert A. Langdon, Plan Administrator of the Ohio River Company, (Ohio Division) Basic Pension Plan, and Robert A. Langdon, Individually, Defendants.

Civ. A. No. 78–3060.

United States District Court,
S. D. West Virginia,
Huntington Division.

July 6, 1981.

Frederick L. Delp, Huntington, W. Va., for plaintiff.

Thomas H. Gilpin, William C. Beatty, Huntington, W. Va., Richard A. Zellner, Irvin M. Feldman, Cleveland, Ohio, for defendants.

## MEMORANDUM OPINION AND ORDER

STAKER, District Judge.

Plaintiff Everett B. Bostic, a resident of this District, filed suit in this court on March 23, 1978, claiming that the defendants had violated certain of his rights under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et seq.* Specifically, plaintiff alleges that defendants have not provided him with either increased and additional pension benefits to which he says he is due or forms and materials with which application for such benefits can be made.[1] Plaintiff also charges that the Plan is administered in an arbitrary and discriminatory manner.

Now before the court is the defendants' motion to dismiss the within complaint because of improper venue, filed pursuant to Rule 12(b)(3), Federal Rules of Civil Procedure, and various memoranda and other material relating to said motion. It is noted that this motion is a renewed one, the first such motion having been denied without prejudice by Judge Charles H. Haden II of this court on August 31, 1978.[2] Pursuant to 28 U.S.C. § 1406(a),[3] the court will treat the defendants' motion not as one seeking dismissal, but as one seeking transfer of this cause to another district.

29 U.S.C. § 1132(e)(2) governs where proper venue is laid for ERISA actions. It reads as follows:

Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found.

Defendant Robert A. Langdon has filed an affidavit which indicates that he lives and works[4] exclusively within the Southern

---

1. Plaintiff Bostic, a former employee of the Ohio River Company, sustained an on-the-job injury leading to his total disability on or about February 12, 1961. Bostic Affidavit, paras. 5 & 6. As a result of said injury, Bostic has, since about May of 1962, continuously received a disability pension from the Plan or its predecessors.

2. It is likewise noted that there is precious little law on the ERISA venue issue contained in the instant motion. Besides the cases cited by counsel in their excellent memoranda (which were unavailable to Judge Haden at the time he made his ruling) the court has uncovered only a few other cases which are relevant thereto, and most of those just peripherally so.

3. "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

4. Of course, this affidavit provides information on where defendant Langdon works only with reference to his employment as Administrator of defendant Plan. Any other work activity of Langdon is irrelevant for purposes herein.

District of Ohio. This information has been uncontroverted by the plaintiff, and for purposes of this motion, will be accepted by the court as proven evidence. It is thus apparent that defendant Langdon does not reside and cannot be found, in either of his within capacities, in the Southern District of West Virginia. Therefore, unless defendant Plan "is administered," or "resides or may be found," or the alleged "breach took place," in this District, then venue for this action is not proper herein.

At the outset, the court would note that, quite predictably, defendants contend that on the instant set of facts, venue is proper only in the Southern District of Ohio, where the plan is headquartered. Plaintiff counters that Congress meant for each of the venue alternatives to be just that—alternatives—and that therefore venue *must* be appropriate in more than one district.

■ Plaintiff's argument fails to comprehend that the class of those who may bring suit under ERISA is not limited to pension plan participants or beneficiaries.[5] 29 U.S.C. § 1132(a) indicates that ERISA civil actions may be instituted by participants, beneficiaries, or fiduciaries of pension plans, or by the Secretary of Labor. The same section of the statute tells us that ERISA is the basis for redressing a wide range of pension plan-related problems. The point is this—ERISA actions may be properly maintained by a number of types of petitioners for a number of types of causes. Therefore, it is not at all inconceivable or even unlikely that the venue alternatives will not be actual alternative choices of forum in all cases. One or more of the "alternatives" may not be applicable to all situations; and, two or more of them will certainly overlap in some not-all-too-uncommon circumstances.

However, plaintiff's argument does comprehend Congress' apparent general intent in promulgating ERISA. While it is true that

[i]n most instances, the purpose of statutorily specified venue is to protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place of trial,

*Leroy v. Great Western United Corp.*, 443 U.S. 173, 183–184, 99 S.Ct. 2710, 2716–2717, 61 L.Ed.2d 464 (1979), such does not seem to have been Congress' overriding concern in establishing ERISA venue. Judge Wallace of the Ninth Circuit Court of Appeals recognized this in his excellent opinion in *Varsic v. U.S. District Court, C.D.Cal.*, 607 F.2d 245 (9th Cir. 1979) in the following discussion:

The liberal intent of Congress, which is embodied in ERISA generally, and in section 1132(e)(2) specifically, is clear. "It is ... the policy of [ERISA] to protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries, ... by providing for ... ready access to the Federal courts." 29 U.S.C. § 1001(b). The Committee on Education and Labor of the House of Representatives, reporting on a draft of the ERISA legislation, stated that

[ERISA'S] enforcement provisions have been designed specifically to provide ... participants and beneficiaries with broad remedies for redressing or preventing violations of the Act. The intent of the Committee is to provide the full range of legal and equitable remedies available in both state and federal courts and to remove jurisdictional and procedural obstacles which in the past appear to have hampered effective enforcement of fiduciary responsibilities under state law for recovery of benefits due to participants. For actions in federal courts, nationwide service of process is provided in order to remove a possible procedural obstacle to having all proper parties before the court.

---

5. The within-discussed legislation and its history make it clear that ERISA's provisions are to be construed liberally in favor of pension plan participants *and* their beneficiaries. Therefore,

reference in this opinion to the proper treatment of either group under the statute applies equally to the other.

H.R.Rep. No. 93–533, 93rd Cong., 1st Sess. 17 (1973), *reprinted in* 1974 U.S. Code Cong. & Ad.News, pp. 4539, 4655.

We cannot agree ... that the congressional purpose of this section was to restrict venue.

*Id.* at 247–248.

More recently, a United States District Court within this Fourth Circuit has come to a similar conclusion. *Fulk v. Bagley*, 88 F.R.D. 153 (M.D.N.C.1980). In *Fulk*, Judge Mehrige of the Eastern District of Virginia, sitting by designation, stated that "Congress intended to open the federal forum to ERISA claims to the fullest extent possible." *Id.* at 167.

While the *Leroy* court explained that the purpose of statutorily specified venue is generally to protect a defendant from a forum-shopping plaintiff, it prefaced that explanation with the qualifying "in most instances." Here, as did the *Varsic* court, and for the same reasons, we come to the conclusion that ERISA is one of those exceptions to the "in most instances" general rule.

This does not necessarily mean that the court is retracting its statements about the § 1132(e)(2) "alternatives" being or not being actual alternatives in this situation. What it does mean is that, since there is an absence of binding precedent to the contrary (or persuasive precedent to the contrary which the court finds convincing), the court will construe the venue provisions of ERISA, with respect to both their applicability and their breadth, liberally in favor of plaintiff, a pension plan participant, as the legislative history and the language of the statute itself would seem to dictate.

I. *"[T]he district where the plan is administered ...."*

It is the defendants' position that the Plan is administered solely in the Southern District of Ohio since it is managed exclusively in that District. Plaintiff argues to the contrary inasmuch as checks and other Plan materials are mailed to persons in the Southern District of West Virginia. In support of this contention, plaintiff cites the following partial definition of "administer" from *The American Heritage Dictionary of the English Language* (American Heritage Publishing Co., 1971), at page 17 thereof:

[1.] to have charge of; direct; manage.

[2.] *to mete out*; *dispense* .... (emphasis supplied by the court)

A similar argument was presented in *Sprinzen v. Supreme Court of the State of New Jersey*, 478 F.Supp. 722 (S.D.N.Y. 1979), at 723. In *Sprinzen*, trustees of what was arguably an "employee benefit plan," established to provide employees with legal services, brought an action in the district in which the plan was managed. Defendants filed a motion to dismiss due to improper venue, claiming that the district of an ERISA employee benefit plan's administration was the district in which benefits were tendered. Defendants continued that, since ERISA's legislative history evinces concern for the beneficiaries of employee benefit plans, to read "administer" as meaning "to manage" for purposes of ERISA venue would be contrary to Congressional intent.

The *Sprinzen* court did not adopt defendants' position. Rather, that court reasoned as follows:

Plaintiffs contend that in determining "where the plan is administered" we are to focus upon the plan, and that we should adopt the general definition of "administer" which is "to manage."....

... Looking at the plain, unambiguous meaning of "where the plan is administered," we find that the plaintiffs' construction is correct. The legislative history and the language used in other sections of the statute do not, contrary to defendants' contentions, require a different result.

*Id.* at 723, 724. *See also Boyer, infra*, at 481 F.Supp. 458–459.

In the instant case, defendant Robert A. Langdon, administrator of the defendant Plan, declares that: he maintains his office, the sole situs of Plan administration, in Cincinnati, Ohio; the assets from which Plan benefits are paid are held in trust in a Cincinnati bank; and all decisions

concerning Plan administration, including "decisions concerning the payment or denial of benefits, and the distribution of claims forms or the refusal to distribute such forms, to present or former employees..." are made in Ohio. Langdon Affidavit, para. 8. He also states that Plan records are maintained in his office. *Id.* Plaintiff, while not admitting any of these allegations, has not refuted their veracity in any way.

It is the court's inclination to apply the *Sprinzen* rule, which is in effect the time-worn plain meaning rule, to the 29 U.S.C. § 1132(e)(2) phrase of "where the plan is administered." And, based on the information now before it, it is the finding of the court that defendant Plan is administered solely within the Southern District of Ohio.

The court is not suggesting that a pension plan may not be administered in more than one district. For instance, it is a matter of record in this case that, prior to and on the effective date of ERISA and for some seventeen months thereafter, defendant Plan (or its predecessor) was administered or managed in at least two districts, one of them being the Southern District of West Virginia. Deposition of Clarence H. Wright. However, from what the court can discern, the defendant Plan was, at the time of the filing of this lawsuit, and is, currently administered in only one district—the Southern District of Ohio.

Therefore, to this extent, defendant's motion is well-founded, and were this the only basis for the motion, transfer would be ordered.

█ The court's finding on this point in no way undermines its comments, *supra*, on construing ERISA liberally in favor of pension plan participants and beneficiaries. Simply because the latter is mandated, it does not necessarily follow that partici-

pants, such as plaintiff, or beneficiaries may have the benefit of every possible doubt in ERISA-related lawsuits. Indeed, here, there is no doubt—the plain meaning of the statute is at odds with plaintiff's position on the "where the plan is administered" provision of § 1132(e)(2).

II. *"[T]he district ... where a defendant resides or may be found ...."*

The court is aware that there is authority which suggests that, with respect to defendant pension plans, the 29 U.S.C. § 1132(e)(2) provision of "resides or may be found" is inapplicable. *Boyer v. J.A. Majors Co. Employees' Profit Sharing Plan,* 481 F.Supp. 454, 458 (N.D.Ga.1979). The court is likewise aware of authority to the contrary, i. e., *Varsic, supra.*

█ *Varsic* held at 247 that a defendant unincorporated pension fund could be "found" for purposes of § 1132(e)(2) in any district in which an employee earned pension credits (i. e., worked),[6] as long as personal jurisdiction is properly asserted over said defendant. In so holding, the Ninth Circuit equated the term "found" in § 1132(e)(2) with the same term in 28 U.S.C. § 1400(a), the copyright venue statute, as interpreted by *Mode Art Jewelers Co. v. Expansion Jewelry Ltd.,* 409 F.Supp. 921, 923 (S.D.N.Y.1976):

A corporation is "found" in any district in which personal jurisdiction might be obtained over it. In other words, it must be engaged, in the district of the suit, in the same type of "systematic and continuous activity" necessary to make it "present" there under the rule of *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). (citations omitted)[7]

---

6. A premise relied on throughout this section of the opinion is that an employee-pension plan participant earns pension credits as he works and that the situs where work occurs is therefore the situs where pension credits are earned.

7. While *Mode Art* dealt with a corporation, it is well-settled that unincorporated associations,

such as defendant Plan herein, are to be treated analogously to corporations as a matter of law. *Denver & R.G.W.R. Co. v. Railroad Trainsmen,* 387 U.S. 556, 87 S.Ct. 1746, 18 L.Ed.2d 954 (1967); *Braun v. Berenson,* 432 F.2d 538 (5th Cir. 1970).

*Varsic* cites not only *Mode Art* but also *Braun v. Berenson*, 432 F.2d 538 (5th Cir. 1970) as an example of the liberal manner in which the term "found," as it appears in legislation, has been interpreted by the courts. *Braun* concerned itself with 15 U.S.C. § 15, the antitrust venue provision, and noted at 544 that a corporation or an unincorporated association can be "found" in any district in which it "continuously carries on any substantial part of its activities" and is thus amenable to the *in personam* jurisdiction of that district's courts.

As has been noted, *supra*, with respect to ERISA itself, the *Varsic* court points out that both the legislative history and the language of the Act, at 29 U.S.C. § 1001(b), states that a major policy thereof is to provide pension plan participants and beneficiaries with ready access to the federal courts. Therefore, concluded the Ninth Circuit, the § 1132(e)(2) language of "found" should be read as broadly as that of the statutes in *Mode Art* and *Braun.*

▮ This court finds the *Varsic* opinion well-reasoned and now chooses to adopt its standard. Therefore, it is incumbent upon the court to determine whether or not *in personam* jurisdiction has been properly asserted over the defendant Plan herein.[8] The *Varsic* court made a like determination by application of the following test from *Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1287 (9th Cir. 1977):

> If the nonresident defendant's activities within a state are "substantial" or "continuous or systematic," there is sufficient relationship between the defendant and the state to support jurisdiction even if the cause of action is unrelated to the defendant's forum activities.

.    .    .    .    .

> If, however, the defendant's activities are not so pervasive as to subject him to general jurisdiction, the issue whether

jurisdiction will lie turns on an evaluation of the nature and quality of the defendant's contacts in relation to the cause of action .... [W]e use the following approach in making this evaluation: (1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws. (2) The claim must be one which arises out of or results from the defendant's forum-related activities. (3) Exercise of jurisdiction must be reasonable.

(quoted in *Varsic* at 607 F.2d 249); *See International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Perkins v. Benguet Consol'd Mining Co.*, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952); *McGee v. International Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *Ratliff v. Cooper Laboratories, Inc.*, 444 F.2d 745 (4th Cir. 1971); *General Elec. Co. v. Rose International, Inc.*, 475 F.Supp. 602 (W.D.Va.1979).

Plaintiff does not contend that the Plan's activities within West Virginia are of the "substantial" or "continuous or systematic" nature required, standing alone, to support personal jurisdiction over the Plan herein; nor does the record reflect such contacts to exist. Therefore, if jurisdiction is to be had over the Plan, it will be via the alternative three-prong minimum contacts analysis.

In this regard, plaintiff argues that the first prong of the test is met inasmuch as: a) the Plan accepts Company contributions and makes payments based on work performed by employees in this District; b) the Plan participated with a union in this district after the effective date of ERISA; and still has dealings with such a union; and c) the plaintiff earned his pension cred-

---

8. There has been no question raised about the propriety of service of process herein, and rightly so. It is unquestioned that all defendants can be "found" within the Southern District of Ohio, where service was effected. Langdon Affidavit, para. 11. 29 U.S.C. § 1132(e)(2) specifically provides that "process may be served in any other district where a defendant resides or may be found."

its, in part, in this District. Plaintiff further contends that "c)" above fulfills the requirements of the second prong of the *Data Disc* test. And, according to plaintiff, the third prong is met inasmuch as the Plan had every reason to anticipate claims of the within nature arising. Plaintiff supports this conclusion by asserting that, in conjunction with "a)" above, the Plan purposely established a fiduciary relationship with Company employees; and, that the Plan's decision to deny plaintiff certain pension benefits had an effect within this District.

▮ The contacts plaintiff suggests are similar to those found sufficient to support personal jurisdiction in *Varsic*. And, there is certainly record evidence tending to support some of what plaintiff argues here.[9] However, the court is not of the opinion that the record has been developed enough to meaningfully apply the above three-prong test. Therefore, on the record before it, the court cannot say that the defendants may or may not be "found" within the meaning of 29 U.S.C. § 1132(e)(2).

This being true, the court is obviously likewise unable to discern whether the Plan could be said to "reside" in this District. If, as here, the evidence is insufficient to support a finding of being "found" in the district, then it certainly is not weighty enough to meet the more stringent requirements of "residing."

On this ground, due to the incomplete nature of the evidence in its present form, the motion is denied without prejudice.

III. *"[T]he district . . . where the breach took place . . ."*

Both parties, in their memoranda, note that the "breach" that will serve as the basis for ERISA venue is not specified in the statute. Plaintiff is contending that it can be either a breach of the terms of a pension plan agreement or a breach of fiduciary or other duties imposed directly by ERISA itself; defendant is saying that only

the latter was intended by Congress. Apparently, defendant is of the belief that if ERISA indeed provides a cause of action for breach of a pension plan agreement's terms, venue may indeed be proper in this Southern District of West Virginia. From defendant's "Brief in Support of Motion to Dismiss Complaint on Grounds of Improper Venue," at pp. 4–5:

> Defendants submit that Congress intended "the breach" refer to a failure to comply with a duty imposed by ERISA. Plaintiff's expansive view of "the breach" would impose an inordinate burden upon pension plans. Specifically, under the Plaintiff's view, venue of an action would be proper in any district where a plaintiff claiming benefits resided.

29 U.S.C. § 1132(a) reads, in pertinent part, as follows:

> A civil action may be brought—
> (1) by a participant or beneficiary—
> . . . .
> (B) to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
> . . . .
> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provision of this subchapter or terms of the plan [.]

▮ From the above language, it is clear that a breach of *either* the terms of the pension plan *or* the duties imposed by ERISA are actionable under the statute. This court sees no indication that a more restricted definition of "breach" was intended by Congress for venue purposes; nor does it see any reason why such should be inferred.

---

9. The court also notes that defendants have made admissions in their memoranda which tend to give credence to some of plaintiff's contentions in this regard. If same could have

properly been considered as evidence herein, the outcome on this ground of the motion may well have been different.

In the within case, plaintiff Everett B. Bostic has alleged breaches of both the terms of the Plan agreement and the duties imposed upon Langdon by ERISA. Plaintiff claims breach of the Plan agreement in his assertion that he was denied increased benefits due him under the same. He charges Langdon with breaching his ERISA-based duties (29 U.S.C. § 1024(b)(4); Plan Agreement, Art. VI, § 5 [10]) of sending him requested information on making application for these increased benefits, and in other particulars.

With regard to breaches of pension plan agreements, in general, by parties such as the defendants within, *Boyer, supra*, held, in effect, that such could only occur at a situs of Plan administration. 481 F.Supp. 459. In *Boyer*, plaintiff, a Georgia resident, contended that defendant Plan Administrators (Committee) had breached the relevant plan agreement in Georgia when they, in Texas, ordered a trustee bank to issue a stop payment order on a benefit check which had already been mailed to plaintiff in Georgia from Texas. The *Boyer* court, without giving justification for its reasoning, characterized plaintiff's assertion as "clearly untenable," and found that a breach, if any, had occurred in Texas, "when the Committee instructed the trustee bank to take such action" and "where the Plan was administered." *Id.*

*Varsic, supra* touched on the issues of such "ERISA venue breaches." at 607 F.2d 248:

> The Fund [pension plan] urges an interpretation of this section [29 U.S.C. § 1132(e)(2)] such that all . . . roads would lead exclusively to its home office . . . . As to the second alternative, the Fund suggests that a breach takes place only where the fiduciaries who control the plan (the trustees and administrators) have acted or omitted to act with respect to a given plaintiff.

While the *Varsic* court did not expressly affirm or disavow that view of "where the

breach takes place," it did, by its finding of the propriety of venue in a district other than that of the Fund's home office, disagree with the Fund's basic premise. Read in context, the implication of the above language is clear: a determination of the site of administration *may* not be a prerequisite to a determination of the site of an agreement breach allegedly committed by a pension plan and/or its administrative personnel.

At least with respect to Bostic's claim of breach of his rights under the Plan agreement, the court now concludes, admittedly somewhat circuitously, that such a breach, if any, did occur within the Southern District of West Virginia.

The court is not aware of any federal law, statutory or common, which gives guidance on determining in which district a breach of a contract such as the one we have here occurs. Plaintiff suggests that we should look to the law of the forum state, West Virginia, *vis Sidney C. Smith Corp. v. Dailey*, 136 W.Va. 380, 67 S.E.2d 523 (1951). In relevant part: "Money due under contract, in the absence of a provision to the contrary, is payable to the creditor where he resides." *Id.* at 527. The issue of whether or not state law applies to the instant situation thus arises.

In this regard, 28 U.S.C. § 1652, the "Rules of Decision Act," provides as follows:

> The laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply.

However, analysis of the situation makes it apparent that state law does not directly apply herein.

One factor tending to discredit plaintiff's proposal that we follow state law is that we are not expressly instructed to do so within

---

**10.** The Plan agreement is appended to the deposition of Clarence A. Wright as an exhibit thereto.

the language of ERISA itself, as we are so instructed in other statutes. In 42 U.S.C. § 1988, for example, we are directed to follow and adopt forum state law in certain civil rights cases, where federal law is deficient and where state law is not "inconsistent with the Constitution and laws of the United States." "Absent an express contrary intention, the scope of a federal statute normally is not dependent on state law." *Thrall v. Wolfe*, 503 F.2d 313, 317 (7th Cir. 1974), *cert. den.* 420 U.S. 972, 95 S.Ct. 1392, 43 L.Ed.2d 652 (1975).

With regard to federal venue determinations, a United States District Court for the District of Delaware has held that "[v]enue, having been fixed by federal law, must be determined by federal law." *Sheldon Steel Corp. v. Standard Fruit Co.*, 219 F.Supp. 521, 522 (1963). And, the United States Supreme Court has recently said that "the determination of where 'the claim arose' for purposes of federal venue under [28 U.S.C.] § 1391 is a federal question whose answer depends on federal law." *Leroy v. Great Western United Corp., supra*, at 443 U.S. 183, fn. 15, 99 S.Ct. at 2717, fn. 15. While we are not herein dealing with 28 U.S.C. § 1391, the general federal tort statute, it is quite reasonable to analogize the 29 U.S.C. § 1132(e)(2) proviso of "where the breach took place" to § 1391's "the district in which the claim arose." for instant purposes. In light of the holding in *Leroy*, such an analogy also goes against plaintiff's argument that we follow state law in this instance.

▮ And, just as a matter of general principle, uniformity in the application of federal statutory law is desired and required, insofar as it may be achieved, in absence of indication of Congressional intent to the contrary. Thus, unless federal courts are instructed to adopt state law as federal law, federal common law (formulated for the occasion if need be) obtains where federal statutory law is deficient. This is not to say that state law may not be looked to for guidance in dividing "federal common law." It is the better practice, however, to look to the majority view on an issue as opposed to examining only the law of the forum state.

It appears that the majority view on the subject of "where the breach took place" in contract actions is as follows:

> [T]he place where a cause of action for breach of contract arises is generally—almost universally—the place where the contract is to be performed. The reason why the place of the breach of contract is generally the place of its performance is that unless the place of performance is waived or performance is anticipated, it is only at such place that there is a breach or that it can be determined whether there is a breach.

17 *Am.Jur.2d* Contracts, § 521 at p. 1008 (1964, as supplemented through July, 1980); *Gardner Eng'g Corp. v. Page Eng'g. Co.*, 484 F.2d 27 (8th Cir. 1973); *Deering Milliken Research Corp. v. Textured Fibres, Inc.*, 310 F.Supp. 491 (D.S.C.1970); *Edgewater Drugs, Inc. v. Jax Drugs, Inc.*, 138 So.2d 525 (Fla.App.1962); *Davis v. Cook Bros. Trckg. & Equipment*, 175 Cal.App.2d 667, 346 P.2d 890 (1959); *Smith Corp. v. Dailey, supra*; *Grimes Co. v. Nelson*, 94 Colo. 487, 31 P.2d 488 (1934); *Richard v. American Union Bank*, 241 N.Y. 163, 149 N.E. 338 (1925). *See also* 1 *Moore's Federal Practice* ¶ 0.142[5.–2] at 1435 (2d Ed. 1980).

▮ While there may be some confusion over what, precisely, is meant in the above excerpt by the phrase "the place of performance," read in context it is clear that it is the place where the recipient of benefit under the contract actually acquires his due. In the instant case, for example, it would be the place where pension benefits are received, which is plaintiff's residence within the Southern District of West Virginia. Bostic Affidavit, para. 3. Therefore, adopting this "majority view" on the subject as federal common law, it is the finding of the court that venue for this action is proper in the Southern District of West Virginia inasmuch as plaintiff has included a breach of plan agreement claim in his complaint.

The court is mindful that the practical effect of this decision is that, under these circumstances, venue has been found to be appropriate in the district where the plaintiff resides.[11] However, after reviewing the ERISA statute and its legislative history—and particularly the concern expressed therein for participants, their rights, and their ease of access to the courts—and applying what pertinent law is available, it is the feeling of the court that it has no choice but to come to this conclusion. This comment is made for purposes of further clarification, since the language of "where the plaintiff resides," which appears in 28 U.S.C. § 1391(a), is noticeably absent from 29 U.S.C. § 1132(e)(2).

An issue which is no longer before the court is in which district a breach of duties imposed by ERISA itself occurs. The resolution of that question is left for another day.

### IV. Conclusion

Based on the foregoing, the court now finds and holds that venue for this action, pursuant to 29 U.S.C. § 1132(e)(2), is properly laid in this Southern District of West Virginia. Therefore, defendants' motion to transfer this case to the Southern District of Ohio is hereby OVERRULED and DENIED.

11. As to defendants' contention that this "practical effect" could not have been intended by Congress because of the "inordinate burden" it places on the Plan, a virtually identical argument was raised by the defendant Fund in *Varsic* at 607 F.2d 248. The Ninth Circuit's response:

We conclude that, while Congress may have been concerned with such a possibility, it clearly struck the balance in favor of liberal venue.
*Id.* We, today, come to the same conclusion.