**Earl R. McFARLAND and David Evans**

v.

**Christian C. YEGEN, Jason Semel, and Yegen Holdings Corp.**

No. C–88–278–L.

United States District Court, D. New Hampshire.

Nov. 1, 1988.

Sheehan, Phinney, Bass & Green by Mark F. Weaver, Alan P. Cleveland, Manchester, N.H., Michael Dell, Kramer, Levin, Nessen, Kamin & Frankel, New York City, for plaintiffs.

Devine, Millimet, Stahl & Branch by Andrew D. Dunn, Manchester, N.H., for defendants.

## ORDER ON MOTIONS TO DISMISS

LOUGHLIN, District Judge.

The plaintiffs, Earl R. McFarland and David Evans, participants and beneficiaries in an Employee Stock Ownership Plan of defendant Yegen Holdings Corp. (the "ESOP"), have brought this action pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461, against Yegen Holdings, Christian C. Yegen, the President of Yegen Holdings and a trustee of the ESOP, and Jason Semel, a trustee of the ESOP. The complaint alleges that the defendants breached fiduciary duties owed to the ESOP, in violation of ERISA, by not acting in the interests of the ESOP participants. Jurisdiction exists under 29 U.S.C. § 1132(e)(1).

Yegen Holdings and Yegen have moved to dismiss for lack of venue, under 29 U.S. C. § 1132(e)(2), or for transfer of the action to New Jersey, pursuant to 28 U.S.C. § 1404(a). Semel has moved to dismiss for lack of personal jurisdiction and for lack of venue. The plaintiffs have opposed these motions.

The plaintiffs are residents of New Hampshire who worked in New Hampshire for Yegen Associates, Inc., a wholly owned subsidiary of Yegen Holdings, and participated in the ESOP during the period of the alleged misconduct of the defendants. All of the defendants are citizens of New Jersey. Yegen Holdings has mailed correspondence to the plaintiffs and other ESOP participants regarding the ESOP, including a letter on April 28, 1987 seeking the release of all claims in connection with the ESOP, which was signed by Yegen. Fewer than six of the more than 940 participants in the ESOP reside in New Hampshire. A majority reside in New Jersey.

ERISA provides for venue in four possible locations: "where the [employee benefit] plan is administered, where the breach took place, or where a defendant resides or may be found...." 29 U.S.C. § 1132(e)(2). It provides for service of process "in any other district where a defendant resides or may be found." *Id.* The defendants contend that none of the venue provisions applies to them. Semel further contends that the New Hampshire Long Arm Statute, N.H.Rev.Stat.Ann. § 510:4, does not authorize an exercise of jurisdiction over him and that he lacks the "minimum contacts" with New Hampshire necessary for due process to permit the exercise of jurisdiction. *See International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). The plaintiffs contend that venue is proper in New Hampshire because the breach took place in New Hampshire and the defendants may be found in New Hampshire. The plaintiffs further contend that the New Hampshire Long Arm Statute does not apply and that any due process requirements are met.

Other courts that have considered venue in ERISA cases have construed the venue provisions very broadly. The legislative history of ERISA and the language of the Act itself demonstrate that Congress "clearly struck the balance in favor of liberal venue." *Varsic v. United States District Court,* 607 F.2d 245, 248 (9th Cir. 1979); *see* H.R.Rep. No. 533, 93d Cong., 2nd Sess. 17, *reprinted in* 1974 U.S.Code Cong. & Admin.News 4639, 4655; 29 U.S.C. § 1001(b); *see also Wallace v. American Petrofina, Inc.,* 659 F.Supp. 829, 831 (E.D. Tex.1987); *Bostic v. Ohio River Co. (Ohio Div.) Basic Pension Plan,* 517 F.Supp. 627, 630–31 (S.D.W.Va.1981); *Turner v. CF & I Steel Corp.,* 510 F.Supp. 537, 542 (E.D.Pa. 1981).

The plaintiffs contend that the alleged breach occurred in New Hampshire because that is where the contractual promise to pay the ESOP benefits was to be performed. They rely on *Wallace* and *Bostic,* both of which held that the breach

occurs at the place of performance of the contract and that the contract was to be performed where the plaintiff was to receive the benefits of the pension plan. *Wallace,* 659 F.Supp. at 832; *Bostic,* 517 F.Supp. at 636. However, those cases deal with a different type of breach. In *Bostic,* the place of performance was where the plaintiff was to receive his benefits because the plaintiff claimed a breach of the plan agreement. *Bostic,* 517 F.Supp. at 636. The court specifically did not rule on where "a breach of duties imposed by ERISA itself occurs." *Id.* at 637. In *Wallace,* the court followed the reasoning of *Bostic,* in a case involving an improper calculation of benefits under the plan. *Wallace,* 659 F.Supp. at 830, 832.

In the instant case, the plaintiffs have not alleged a breach of the plan agreement. They allege a violation by the defendants of their fiduciary duty to the ESOP beneficiaries, as imposed by ERISA. The plaintiffs do not allege that they were not given the benefits due them as was the case in *Bostic* and *Wallace.* Rather, they allege that disloyal conduct of the defendants caused the ESOP to lose most of its value. Where plan beneficiaries are denied what they are due, the breach may well occur where the beneficiaries were to receive those benefits. *But see Turner,* 510 F.Supp. at 541 (breach occurred either where "the decisions regarding payment amounts were made" or from where the checks were sent); *Boyer v. J.A. Majors Co. Employees' Profit Sharing Plan,* 481 F.Supp. 454, 459 (N.D.Ga.1979) (where trustee issued a stop payment on a check issued to the plaintiff, the alleged breach occurred where the Plan was administered). A breach of fiduciary duties, however, can occur only where the defendants commit or fail to commit the actions that their duties require. In this case, that is in New Jersey, where the trustees met and the ESOP was managed.

■ The plaintiffs also contend that the defendants may be "found" in this District because contributions to the ESOP were earned by the plaintiffs in New Hampshire and the court has personal jurisdiction over the defendants. The plaintiffs rely on *Varsic* and the many cases that have followed the reasoning of *Varsic. See, e.g., Turner,* 510 F.Supp. at 542; *Bostic,* 517 F.Supp. at 631; *Wallace,* 659 F.Supp. at 831.

In *Varsic,* the court noted that the term "found" has been construed liberally in other venue provisions and concluded that the term "is intended to expand, rather than restrict, the range of permissible venue locations." *Varsic,* 607 F.2d at 248. The court referred to the term as interpreted under the antitrust and copyright venue provisions. Under the copyright venue provision, an action may be brought where the defendant "resides or may be found." 28 U.S.C. § 1400(a). There "found" is interpreted to permit venue in any district in which personal jurisdiction may be obtained over the defendant. *Varsic,* 607 F.2d at 248 (citing *Mode Art Jewelers Co. v. Expansion Jewelry, Ltd.,* 409 F.Supp. 921, 923 (S.D.N.Y.1976)); 15 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3819 (1986). ("The key word in this section [§ 1400(a)] is 'found'. A defendant is found wherever it may be validly served with process."). The court concluded that the term "found" under ERISA "has the same broad application as it does in cases involving the antitrust and copyright venue provisions. Therefore, if personal jurisdiction is properly asserted over the Fund, it is 'found' there." *Varsic,* 607 F.2d at 248; *see also Turner,* 510 F.Supp. at 542; *Bostic,* 517 F.Supp. at 631; *Wallace,* 659 F.Supp. at 831.

Considering the liberal intention of Congress with regard to venue, as expressed by the legislative history and the language of ERISA, as well as the use of the term "found", this court adopts the standard chosen in *Varsic* and accepted by later courts.

■ Initially, the court must determine what jurisdictional standard to apply. New Hampshire's long-arm statute is inapplicable. ERISA provides for the service of process in any district "where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2); *see also* Fed.R.Civ.P. 4(e) (permitting service of process outside the state

in which a district court is held when authorized by a statute of the United States); *Johnson Creative Arts, Inc. v. Wool Masters, Inc.*, 743 F.2d 947, 950 (1st Cir.1984) (discussing requirements of nationwide service of process). Therefore, use of the state long-arm statute is unnecessary. Furthermore, due process does not impose a requirement of minimum contacts with a particular district or state in order for a federal court to obtain personal jurisdiction in a federal question case. *Johnson Creative Arts*, 743 F.2d at 950. The defendants must only have minimum contacts with the United States, *id.*, which cannot be gainsaid in this case.

■ Nonetheless, the ERISA venue provision could not be intended to mean that a defendant is "found" in every district, which would result if venue was proper everywhere a district court could exercise personal jurisdiction. *See id.* That would make the language of the venue provision superfluous and inconsistent with the language of the service of process provision, which permits the service of process in any *other* district where a defendant may be found, besides the district in which the action is brought. 29 U.S.C. § 1132(e)(2). That also would be unfair to the defendants, even considering the liberal intention of Congress.

In *Varsic*, the court ruled that venue was proper in a district, and a defendant could be found there, if a defendant had "minimum contacts" with that district, under the standard enunciated in *International Shoe* and progeny. *Varsic*, 607 F.2d at 248–49. This standard has been adopted by several other courts and is what this court chooses to follow. *See, e.g., Turner*, 510 F.Supp. at 542; *Ballinger v. Perkins*, 515 F.Supp. 673, 676 (W.D.Va. 1981); *Wallace*, 659 F.Supp. at 831.

Therefore, a defendant may be found in this district if he has "certrain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe*, 326 U.S. at 316, 66 S.Ct. at 158. The defendant's conduct must make it reasonable that the defendant would anticipate being haled into court here. *World–Wide Volkswagen v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). This can happen if a defendant "purposefully directs" its activities toward the forum district, even without a physical presence. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985). Where the defendant's activities connected to the forum are not "continuous and systematic," the litigation must result from alleged injuries that arise out of or relate to those activities. *Id.* 471 U.S. at 472, 105 S.Ct. at 2182; *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414–16, 104 S.Ct. 1868, 1872–73, 80 L.Ed.2d 404 (1984).

■ The defendants' contacts with New Hampshire are very limited. The plaintiffs were employed by Yegen Associates and not by Yegen Holdings. Besides the ownership of Yegen Associates and any activities because of the ESOP, Yegen Holdings had no other contacts with New Hampshire. The parties dispute whether Yegen Associates or Yegen Holdings contributed to the ESOP and the exhibits do not resolve the issue, but Yegen Holdings admits to sending correspondence to the plaintiffs in New Hampshire regarding the ESOP.

These contacts are less substantial and less related to the plaintiffs' allegations than those found in other ERISA venue cases. In *Varsic*, the leading case, the pension fund that received contributions from employers on behalf of employees working in the district and that provided benefits to beneficiaries in the district could be "found" in the district. *Varsic*, 607 F.2d at 249. The funds activities had generated fiduciary responsibilities to workers in the district, and the action, based on a denial of pension benefits, "directly involve[d] the Fund's activities" in the district. *Id.* Here, the ESOP is not a defendant. Also, the plaintiffs do not allege a denial of benefits, which would have a more direct impact in New Hampshire. Any breach of fiduciary duties that may have occurred took place in New Jersey, as discussed above, and the direct impact was

on the value of the ESOP, not on benefits being paid the plaintiffs. Unlike the situation in *Concord Labs v. Ballard Medical Products*, 701 F.Supp. 272 (D.N.H.1988), the letters from the defendants did not themselves constitute a basis for the plaintiffs' complaint. Even ·Yegen's trips to New Hampshire were unrelated to the alleged breach of fiduciary duties.

Other ERISA cases adopting the minimum contacts test also involved a denial of benefits in the forum district and therefore the activities in the forum were more directly related to the litigation. *See, e.g., Turner*, 510 F.Supp. at 542–43; *Ballinger*, 515 F.Supp. at 676; *Bostic*, 517 F.Supp. at 633. In *Bostic*, moreover, the court used the *Varsic* test only with the pension plan. In considering an administrator of the plan, the court wrote: "he lives and works exclusively within the Southern District of Ohio.... It is thus apparent that defendant Langdon does not reside and cannot be found, in either of his within capacities, in [the forum district]." *Bostic*, 517 F.Supp. at 629–30. Therefore, the pension plan would have to be "found" in the forum for venue to be be proper. *Id.* at 630.

The plaintiffs have not established that any of the defendants "purposefully directed" their activities toward New Hampshire to any significant degree. Moreover, the litigation does not arise out of or relate to those activities. The plaintiffs' allegations relate to the defendants' management of the ESOP's assets and not to the distribution of benefits. Therefore, the court finds that the defendants lack the minimum contacts necessary for any of them to be "found" in New Hampshire.

■ Even if the plaintiffs could establish that venue was permissible in New Hampshire, transfer of this action to New Jersey still would be warranted. Transfer when venue is proper is governed by 28 U.S.C. § 1404(a):

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

When venue is improper, transfer is governed by 28 U.S.C. § 1406(a), which permits transfer to any district in which the action could have been brought "if it be in the interest of justice." "[I]f the action is properly transferable pursuant to § 1404(a), assuming venue is proper in this district, then *a fortiori* the action will also be properly transferable pursuant to § 1406(a), assuming venue in this district is improper." *Sheet Metal Workers' National Pension Fund v. Gallagher*, 669 F.Supp. 88, 91 (S.D.N.Y.1987) (ERISA action transferred without resolving whether court has personal jurisdiction over the defendants or whether venue is proper). Thus, the court will consider whether transfer would be warranted by § 1404(a), bearing in mind that a determination of whether a transfer is appropriate is a matter within the discretion of the court. *United States ex rel. LaValley v. First National Bank of Boston*, 625 F.Supp. 591, 594 (D.N.H.1985).

This action could have been brought in New Jersey, where the defendants reside and can be found. Obviously, the defendants would find it more convenient to litigate in New Jersey. In addition, the records and documents of Yegen Holdings and the ESOP are in New Jersey. Although the defendants do not provide specifics, the court also finds it likely that the litigation will be more convenient to the witnesses in New Jersey and that "the relative ease of access to various evidentiary materials," *Galonis v. NBC*, 498 F.Supp. 789, 793 (D.N.H.1980) will be increased in New Jersey, where the ESOP was managed and the alleged breaches occurred. As in *Gallagher*, "New Jersey overwhelmingly appears to be the situs of operative facts, a circumstance favoring defendants' motion." *Gallagher*, 669 F.Supp. at 93.

At most, the convenience of the plaintiffs and their choice of forum favor venue in New Hampshire. "In general a plaintiff's choice of forum is entitled to considerable weight. That choice is accorded less weight when, as in the instant case, '[t]he operative facts of [the] case have no mate-

rial connection with this district.'" *Id.* (quoting *Heyco, Inc. v. Heyman,* 636 F.Supp. 1545, 1551 (S.D.N.Y.1986)). Therefore, in balance, the interests of justice favor a transfer of venue to New Jersey.

Considering the plethora of motions and memorandums filed in support of and in opposition to the defendants' motions to dismiss, the defendants' motion for oral argument (doc. # 18) is denied. The parties' motions to allow replies (doc. # 12, 14, 19) are granted. Defendant Semel's motion to dismiss for lack of personal jurisdiction or lack of venue (doc. # 10) is denied. The motion of defendants Yegen and Yegen Holdings to dismiss for lack of venue or to transfer to the United States District Court for the District of New Jersey (doc. # 6) is denied in regard to dismissal and granted in regard to transfer.

Accordingly, this action (C–88–278–L) is hereby transferred to the District of New Jersey.