607 F.2d 245
 56 A.L.R.Fed. 745, 1 Employee Benefits Ca 1844
 John Ivan VARSIC, Petitioner,
v.
UNITED STATES DISTRICT COURT FOR the CENTRAL DISTRICT OF
CALIFORNIA, Respondent,
and
Amalgamated Insurance Fund, a/k/a Amalgamated Retirement
Fund, Board of Trustees of the Amalgamated
Insurance Fund, and Victor Berger, Real
Parties in Interest.
 No. 78-2242.
 United States Court of Appeals,
Ninth Circuit.
 Oct. 5, 1979.
 
 Neal S. Dudovitz (argued), National Senior Citizens Law Center, Los Angeles, Cal., for petitioner.
 Thomas J. Fineman (argued), Rose, Klein & Marias, Los Angeles, Cal., for respondent.
 Appeal from the United States District Court for the Central District of California.
 Before WALLACE and HUG, Circuit Judges, and SOLOMON,* District Judge.
 WALLACE, Circuit Judge:
 
 
 1
 Varsic has petitioned this court for a writ of mandamus commanding the United States District Court for the Central District of California to rescind its order transferring his action for pension benefits to the United States District Court for the Southern District of New York, and for other relief. We agree with Varsic that the transfer order is erroneous and that this case meets the strict prerequisites for extraordinary relief. We therefore grant his petition.
 
 
 2
 * The procedural history of this case, insofar as it is pertinent here, began when Varsic filed his complaint In forma pauperis in the United States District Court for the Central District of California. Varsic sought declaratory, injunctive, and monetary relief on behalf of himself and others similarly situated pursuant to various provisions of the Taft-Hartley Act, 29 U.S.C. §§ 141 Et seq., and the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 Et seq. Defendants, the Amalgamated Insurance Fund, its Board of Trustees, and its administrator (hereinafter collectively referred to as the Fund), moved for dismissal, or in the alternative, for transfer of Varsic's action to the United States District Court for the Southern District of New York. They argued, among other things, that venue did not lie in the Central District of California pursuant to the ERISA venue provision, 29 U.S.C. § 1132(e)(2).[1] The district judge denied the Fund's motion to dismiss, but granted the motion to transfer the action pursuant to 28 U.S.C. § 1406(a).[2] Varsic seeks relief from this order in his petition here.
 
 II
 
 3
 We consider first whether the district court erroneously granted the motion to transfer. The district judge apparently concluded that the ERISA venue provision did not permit venue to be laid in the district where an employee performs his work and earns his pension credits. We conclude that an unincorporated pension fund may be "found," within the meaning of 29 U.S.C. § 1132(e)(2), in such a district.
 
 
 4
 The liberal intent of Congress, which is embodied in ERISA generally, and in section 1132(e)(2) specifically, is clear. "It is . . . the policy of (ERISA) to protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries, . . . by providing for . . . ready access to the Federal courts." 29 U.S.C. § 1001(b). The Committee on Education and Labor of the House of Representatives, reporting on a draft of the ERISA legislation, stated that
 
 
 5
 (ERISA's) enforcement provisions have been designed specifically to provide . . . participants and beneficiaries with broad remedies for redressing or preventing violations of the Act. The intent of the Committee is to provide the full range of legal and equitable remedies available in both state and federal courts and to remove jurisdictional and procedural obstacles which in the past appear to have hampered effective enforcement of fiduciary responsibilities under state law for recovery of benefits due to participants. For actions in federal courts, nationwide service of process is provided in order to remove a possible procedural obstacle to having all proper parties before the court.
 
 
 6
 H.R.Rep. No. 93-533, 93rd Cong., 1st Sess. 17 (1973), Reprinted in (1974) U.S.Code Cong. & Ad.News, pp. 4639, 4655.
 
 
 7
 We cannot agree with the Fund's contention that the congressional purpose of this section was to restrict venue. The Fund urges that Congress intended to prevent the drain on pension funds which could result from subjecting them to suits in any district in which covered work is performed. We conclude that, while Congress may have been concerned with such a possibility, it clearly struck the balance in favor of liberal venue.
 
 
 8
 Section 1132(e)(2) specifies that a plaintiff may bring an action where (1) a plan is administered, or (2) a breach took place, or (3) a defendant resides or (4) a defendant may be found. The Fund urges an interpretation of this section such that all four roads would lead exclusively to its home office. First, it argues that when a pension fund's administration is centralized in one district, it may be sued only in that district, regardless of the source of its contributions. Specifically, the Fund suggests that "administration" includes the maintenance and processing of documents, structuring of a plan, decisionmaking regarding a plan, and the implementation of those decisions. As to the second alternative, the Fund suggests that a breach takes place only where the fiduciaries who control the plan (the trustees and administrators) have acted or omitted to act with respect to a given plaintiff. Finally, as to the third and fourth alternative venue grounds, the Fund apparently contends, as it did before the district court in support of its motion to dismiss or transfer, that because the Fund is not administered in the Central District of California it does not reside and cannot be found there. To accept this interpretation, we would apparently need to conclude that Congress intended that each of the four specific alternatives available to ERISA plaintiffs require essentially the same factual basis, I. e., where the fund is administered, as defined by the Fund. We do not ascribe to Congress that intent.
 
 
 9
 We find it significant that the term "found," employed by Congress in section 1132(e)(2), has been construed liberally when used in other venue provisions. See 1 Moore's Federal Practice PP 0.144(8), at 1496, 0.144(15), at 1552 (2d ed. 1979). See also id. P 0.144(1), at 1471-72 & nn.18 & 19. For example, with respect to the federal antitrust venue provision, 15 U.S.C. § 15, the Fifth Circuit has reasoned: "It is well established that, in the case of an unincorporated association, the association will be treated analogously to a corporation, . . . and will be deemed "found" within a district if it continuously carries on any substantial part of its activities there." Braun v. Berenson, 432 F.2d 538, 544 (5th Cir. 1970) (citations omitted). The copyright venue provisions, 28 U.S.C. § 1400(a), about which it has been stated generally that, "(a) corporation is 'found' in any district in which personal jurisdiction might be obtained over it," Mode Art Jewelers Co. v. Expansion Jewelry Ltd., 409 F.Supp. 921, 923 (S.D.N.Y.1976); Accord, Sterling Television Presentations, Inc. v. Shintron Co., 454 F.Supp. 183, 190-91 (S.D.N.Y.1978), provide a second example of this liberal approach. Thus, Congress' choice of this term for inclusion in the ERISA venue provision further supports our conclusion that the provision is intended to expand, rather than restrict, the range of permissible venue locations.
 
 
 10
 In view of the legislative history of the ERISA venue provision, as well as Congress' very choice of the word, we conclude that Congress intended that "found," as used in section 1132(e)(2), has the same broad application as it does in cases involving the antitrust and copyright venue provisions. Therefore, if personal jurisdiction is properly asserted over the Fund, it is "found" there.
 
 
 11
 We consider next, therefore, whether the Fund's contacts with the Central District of California are sufficient to satisfy the "minimum contacts" test for personal jurisdiction, International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The Fund apparently concedes that it both receives contributions from employers on behalf of employees working in the district and provides benefits to some beneficiaries who live in the district. Moreover, the Fund acknowledges that its activities have generated fiduciary responsibilities to Varsic and other workers on whose behalf it has accepted contributions. The Fund argues, however, that its contacts in and relationship with the Central District of California are insufficient to support personal jurisdiction, and thus it is not "found" there as that term is used in section 1132(e)(2). We disagree.
 
 
 12
 The Supreme Court recently summarized the requirements of International Shoe and its progeny:
 
 
 13
 (A) defendant (must) "have certain minimum contacts with (the forum State) such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " . . . While the interests of the forum State and of the plaintiff in proceeding with the cause in the plaintiff's forum of choice are, of course, to be considered, . . . an essential criterion in all cases is whether the "quality and nature" of the defendant's activity is such that it is "reasonable" and "fair" to require him to conduct his defense in that State.
 
 
 14
 Kulko v. Superior Court of California, 436 U.S. 84, 92, 98 S.Ct. 1690, 1697, 56 L.Ed.2d 132 (1978) (citations omitted). See Forsythe v. Overmyer, 576 F.2d 779, 782 (9th Cir.), Cert. denied, 439 U.S. 864, 99 S.Ct. 188, 58 L.Ed.2d 174 (1978); Data Disc, Inc. v. Systems Technology Assocs., Inc., 557 F.2d 1280, 1287 (9th Cir. 1977). As the Court observed in Kulko, each case must be decided upon its own facts. 436 U.S. at 92, 98 S.Ct. 1690.
 
 
 15
 We recently considered the circumstances in which personal jurisdiction will properly lie.
 
 
 16
 If the nonresident defendant's activities within a state are "substantial" or "continuous and systematic," there is a sufficient relationship between the defendant and the state to support jurisdiction even if the cause of action is unrelated to the defendant's forum activities. . . .
 
 
 17
 If, however, the defendant's activities are not so pervasive as to subject him to general jurisdiction, the issue whether jurisdiction will lie turns on an evaluation of the nature and quality of the defendant's contacts in relation to the cause of action. In our circuit, we use the following approach in making this evaluation: (1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws. (2) The claim must be one which arises out of or results from the defendant's forum-related activities. (3) Exercise of jurisdiction must be reasonable.
 
 
 18
 Data Disc, Inc. v. Systems Technology Assocs., Inc., supra, 557 F.2d at 1287 (citations omitted); Accord, Forsythe v. Overmyer, supra, 576 F.2d at 782. We need not decide whether the Fund's contacts with California are "continuous and systematic" or "substantial" enough to afford jurisdiction over an action unrelated to the Fund's forum activities. This action directly involves the Fund's activities in California and we conclude that those contacts suffice to subject the Fund to jurisdiction.[3]
 
 
 19
 As to the first portion of the three-part Data Disc test, we conclude that the Fund has purposefully availed itself of the privilege of conducting activities in the Central District of California. The Fund suggests that it has no control over the location of either beneficiaries or the performance of contribution-producing work. Specifically, it argues that contributions are controlled by a union's ability to negotiate for pension contributions, and that beneficiaries choose for themselves where they will reside and thus receive their benefits. We need not reach the question whether a beneficiary who moves from the forum where the pension fund credits were earned into a new forum can establish jurisdiction in the second forum. For this case, we need conclude only that the Fund's decision to participate with a union in a given forum, and to undertake the fiduciary duty of receiving contributions and making payments based upon work performed there, is sufficient to support In personam jurisdiction in that forum. Thus, the first part of the three-tier Data Disc inquiry is satisfied.
 
 
 20
 Because it is clear that the claim in this case arose from the Fund's contacts with the forum, and, thus, that the second-tier is satisfied, we have left only to determine whether the circumstances here satisfy the third part of that test: whether an exercise of jurisdiction in the Central District would be reasonable in the circumstances of this case. "The degree to which a defendant interjects himself into the (forum) affects the fairness of subjecting him to jurisdiction." Data Disc, Inc. v. Systems Technology Assocs., Inc., supra, 557 F.2d at 1288. The Fund purposefully placed itself in a fiduciary capacity and received contributions from the forum. The Fund, therefore, could surely have anticipated the very type of claim involved here. We conclude that the Fund's out-of-state decision to deny benefits to Varsic had an effect within the state which, in view of these circumstances, reasonably supports jurisdiction. See Forsythe v. Overmyer, supra, 576 F.2d at 783.
 
 
 21
 Therefore, the Fund can be "found" in the Central District of California for the purposes of this action. Consequently, venue is properly laid in that district pursuant to the "found" provision of 29 U.S.C. § 1132(e)(2).[4]
 
 III
 
 22
 Concluding that the district court has erred, we would simply reverse if the question were before us on appeal. We must consider other factors as well, however, when, as here, mandamus is requested. "The remedy of mandamus is a drastic one, to be invoked only in extraordinary situations." Kerr v. United States Dist. Court, 426 U.S. 394, 402, 96 S.Ct. 2119, 2123, 48 L.Ed.2d 725 (1976). As we observed in Guerra v. Board of Trustees, 567 F.2d 352, 353-54 (9th Cir. 1977), "Mandamus is granted only where the district court has exceeded its jurisdiction, or has improperly failed to exercise jurisdiction, or has taken action amounting to a usurpation of power."
 
 
 23
 In an effort to clarify such generalities and to provide a practical analytical framework, we have identified five specific guidelines for determining the propriety of mandamus relief in particular cases:
 
 
 24
 (1) The party seeking the writ has no other adequate means, such as a direct appeal, to attain the relief he or she desires. . . . (2) The petitioner will be damaged or prejudiced in a way not correctable on appeal. . . . (3) The district court's order is clearly erroneous as a matter of law. . . . (4) The district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules. . . . (5) The district court's order raises new and important problems, or issues of law of first impression.
 
 
 25
 Bauman v. United States Dist. Court, 557 F.2d 650, 654-55 (9th Cir. 1977) (citations omitted). As we emphasized in Bauman, however, even these rather specific guidelines have their limits. Thus, by their nature, the guidelines will not "result in bright line distinctions" in every case. Id. at 655. We pointed out the unlikelihood that all of the guidelines will ever point in the same direction or that all of them will even be applicable in any given case. Id. Indeed, we acknowledged that most cases would actually "require a balancing of conflicting indicators." Id.
 
 
 26
 In applying the Bauman analysis in this case, we conclude that Varsic will suffer "peculiar hardship" from the transfer order, and that this case presents extraordinary circumstances which warrant extraordinary relief. We now consider in turn each of the guidelines as they apply here.
 
 A.
 
 27
 The parties agree that the district court's order is not a final, appealable order. This is indeed correct. See, e. g., Pacific Car & Foundry Co. v. Pence, 403 F.2d 949, 951 (9th Cir. 1968); Gulf Research & Dev. Co. v. Harrison, 185 F.2d 457, 459 (9th Cir. 1950). Moreover, the district judge refused Varsic's request for certification of an interlocutory appeal pursuant to the provisions of 28 U.S.C. § 1292(b). Thus, aside from the possibility of some relief on appeal in the Second Circuit from a final judgment in the Southern District of New York, or perhaps extraordinary relief in the Second Circuit at this time, Varsic is without a remedy.
 
 
 28
 To be sure, as we emphasized in Gulf Research & Dev. Co. v. Harrison, supra, 185 F.2d at 460, the possibility of an appeal from the final judgment in the transferee circuit, even with the difficult burden of demonstrating prejudice there (See Magnetic Eng'r. & Mfg. Co. v. Dings Mfg. Co., 178 F.2d 866, 869 (2d Cir. 1950)), will ordinarily preclude extraordinary relief. Magnetic Engineering makes clear the Second Circuit's position on this question: "The review of any order of the district court in a transferred cause, made before transfer, is within the jurisdiction of the court of appeals of the circuit to which the cause has been transferred . . . ." Id. at 870. To the extent that this view would limit all review to the transferee circuit, we have chosen not to follow it. See Gulf Research & Dev. Co. v. Harrison, supra, 185 F.2d at 459. Yet, the Second Circuit position is relevant for our purposes here. Varsic could at least appeal from the transfer order after final judgment in the Southern District of New York. Magnetic Eng'r. & Mfg. Co. v. Dings Mfg. Co., supra, 178 F.2d at 870.[5] Hence, we must determine whether such an appeal "could not correct extraordinary hardship" to Varsic, Gulf Research & Dev. Co. v. Harrison, supra, 185 F.2d at 460, or, put in the Bauman formulation, whether the transfer order leaves Varsic "damaged or prejudiced in a way not correctable on appeal." Bauman v. United States Dist. Court, supra, 557 F.2d at 654.
 
 B.
 
 29
 In Gulf Research & Dev. Co. v. Harrison, supra, we were confronted, as we are here, with a petition for a writ of mandamus to compel the district court to withdraw an order of transferral issued pursuant to 28 U.S.C. § 1406(a). We observed that we would, in mandamus proceedings, have the power to review an order transferring a case out of this circuit after a suitor had properly invoked federal jurisdiction here. Id. at 459. We concluded, however, that the circumstances of that case were not so extraordinary as to call for such relief. Id. at 459-60.
 
 
 30
 More specifically, we stated that any error would be reviewable in the transferee circuit on appeal from a final judgment there, and that the difficulty in showing that such error was not harmless would not justify relief in mandamus. Id. at 459. We commented that "(t)he remedy of appeal from a final judgment is 'inadequate' so as to justify the use of mandamus only when it is totally unavailable, or when, Because of the particular circumstances, it could not correct extraordinary hardship." Id. at 460 (emphasis supplied). Harrison involved three corporations for whom we did not believe that a trial in the transferee district would be more expensive or burdensome than a trial in the transferor district. Id. at 459-60. Thus, we concluded that the petitioners there had not demonstrated they would suffer "any peculiar hardship" due to the transfer. Id. at 459.
 
 
 31
 We believe that Varsic, contrary to the petitioning corporations in Harrison, will be prejudiced in a way not correctable on appeal. Varsic's petition reveals, and the Fund does not dispute, that Varsic's and his wife's sole source of income is their social security entitlement. As we have already pointed out, Varsic was permitted to proceed in the district court In forma pauperis. Varsic's counsel are employees of programs sponsored by the Legal Services Corporation. Most important, as Varsic is correct in his interpretation of the ERISA venue provision, the transfer will burden him in a way which Congress explicitly attempted to prevent. Put another way, if Varsic is required to prosecute this action in New York, some three thousand miles from his home, he will suffer the very prejudice which the liberal venue provision of 29 U.S.C. § 1132(e)(2) was designed to avoid. Even if he is able later to appeal any unfavorable judgment, this prejudice can never be corrected. As Judge Jerome Frank, dissenting in part in Magnetic Engineering, observed, "paradoxically, if he must thus wait, and then wins at the end of the trial, the hurt to him, caused by the transfer, will be wholly irremediable." 178 F.2d at 870. Finally, assuming that Varsic loses in the Southern District of New York, but successfully appeals the transfer order in the Second Circuit, he will again be severely prejudiced. The impact of the inevitable delay which would result from a second trial in the Central District of California following the appeal in the Second Circuit, on a person in his situation, would not be correctable on appeal. "The irremediable hardship that might result is substantially in excess of the usual inconvenience of an unnecessary trial." Pacific Car & Foundry Co. v. Pence, supra, 403 F.2d at 953. Indeed, the very nature of the prejudice which we find material in part (2) of the Bauman test applies with great force to part (1) as to the adequacy of any relief which is available to Varsic without mandamus.
 
 C.
 
 32
 We consider the next three Bauman guidelines together, for, at least in this case, they are somewhat intertwined. As to the third guideline, we have already concluded that the district court's order was in error as a matter of law. While we should be careful in attaching the adverb "clearly" to erroneous in our hindsight review, we conclude the test is met here.
 
 
 33
 Applying the fourth and fifth guidelines results in a conflict of indicators. The question whether venue is properly laid in the Central District of California pursuant to 29 U.S.C. § 1132(e)(2) on the facts of this case is both of great importance to those who may be entitled to pension benefits under the auspices of ERISA, and is apparently a question of first impression. Yet for the very reason that Varsic raises an issue of first impression, it is clear that the district court's order does not represent an oft-repeated error.
 
 
 34
 On balance, the Bauman indicators rest in Varsic's favor. Relief on appeal would be inadequate and would not correct the severe prejudice that Varsic would suffer as a result of the district court's transfer order. Moreover, the order is erroneous and would frustrate the liberal Congressional intent embodied in section 1132(e)(2). Finally, the importance of this question of first impression to workers and fund trustees alike is obvious. We therefore grant the petition for mandamus and order that the district court rescind its order transferring Varsic's action to the Southern District of New York.[6]
 
 
 35
 PETITION GRANTED.
 
 
 
 *
 Honorable Gus J. Solomon, United States District Judge, District of Oregon, sitting by designation
 
 
 [1]
 29 U.S.C. § 1132(e)(2) states:
 Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found.
 
 
 [2]
 28 U.S.C. § 1406(a) states:
 The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.
 
 
 [3]
 Although it does not, of course, resolve the question, it is of interest that the Fund did not object to In personam jurisdiction in the Central District of California
 
 
 [4]
 We thus do not reach the question whether one or more of the other alternative bases of venue specified in section 1132(e)(2) might be applicable as well
 
 
 [5]
 While Magnetic Engineering may permit Varsic to seek relief in mandamus in the Second Circuit, See 178 F.2d at 870, this does not alter our decision to issue the writ; there is no need to refrain from granting extraordinary relief simply because another court may also be in the position to grant such relief. Moreover, it is the protection of this circuit's jurisdiction, not that of the Second Circuit, with which Varsic and we are concerned
 
 
 [6]
 In view of our disposition of this case we need not address the various other requests for relief which Varsic has brought before us