**Glynn W. ROGERS, Plaintiff,**

v.

**ITT HARTFORD LIFE AND ACCIDENT COMPANY and Entergy Corporation Companies Benefits Plus Long Term Disability Plan, Defendants.**

Civil Action No. 3:97CV210LN.

United States District Court,
.S.D. Mississippi,
Jackson Division.

Nov. 3, 1997.

Joel W. Howell, III, Jackson, MS, for Plaintiff.

Daniel H. Fairly, John E. Hughes, III, Wells, Marble & Hurst, Douglas E. Levanway, Wise, Carter, Child & Caraway, Jackson, MS, for Defendant.

## MEMORANDUM OPINION AND ORDER

LEE, District Judge.

This cause is before the court on the separate motions of defendants Hartford Life and Accident Insurance Company (Hartford) and Entergy Corporation Companies Benefits Plus Long Term Disability Plan (the Plan) to set aside the default judgment previously entered in this cause against the defendants. Plaintiff Glynn Rogers has responded in opposition to the motion. The court has considered the memoranda of authorities, together with attachments, submitted by the parties, and though fully cognizant of the policy favoring resolution of cases on the merits rather than disposition by default, concludes that

defendants' motions should be denied for reasons that follow.

On March 29, 1997, plaintiff, a former employee of Entergy Corporation, filed his complaint in this cause under the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.* alleging that defendants had wrongly denied him long-term disability benefits under Entergy's long-term disability plan, an ERISA plan in which he was a participant by virtue of his employment with Entergy. Coverage for the Plan, identified as the Entergy Corporation Companies Benefits Plus Long Term Disability Plan, is provided by an insurance policy purchased from Hartford. Plaintiff undertook to serve the Plan with process on April 8, 1997 by sending a copy of the summons and complaint by certified mail, return receipt requested, to the Plan's New Orleans, Louisiana address. Subsequently, plaintiff requested that Elizabeth Coleman, Hartford's resident agent for service of process, execute a waiver of service of process in accordance with the provisions of Rule 4(d) of the Federal Rules of Civil Procedure. She did so on April 21, and on April 28, the waiver of service was filed of record.

When neither defendant timely answered, plaintiff requested that default be entered against them, and this was done. Thereafter, following a hearing, this court entered default judgment against both defendants on June 27, jointly and severally, for the total sum of $144,305, consisting of $78,305 for disability benefits, $12,000 in prejudgment interest, $49,000 for hospital, medical and dental benefits, and $5000 for attorney's fees. According to defendants, they first learned of the default judgment upon receiving certain correspondence from plaintiff's counsel dated August 4. The both promptly moved for relief from the default judgment.

Defendants' motions are governed by Rule 55(c) of the Federal Rules of Civil Procedure which provides that "[f]or good cause shown the court may set aside an entry of default and, if a judgment of default has been entered, may likewise set it aside in accordance with Rule 60(b)." Rule 60(b) provides in pertinent part that "the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; ... or (6) any other reason justifying relief from the operation of the judgment."

*Hartford's Motion*

■ Hartford's principal contention in support of its motion to set aside the default judgment is that it was entered without notice to Hartford, in violation of Rule 55(b)(2), which states, "If the party against whom judgment by default is sought has appeared in the action, the party (or, if appearing by representative, the party's representative) shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application." *See Turner v. Salvatierra*, 580 F.2d 199, 201 (5th Cir.1978) (plaintiffs' failure to notify defendant of their default motion provides sufficient reason under Rules 55(c) and 60(b) for defendant's failure to respond). Hartford asserts that Coleman's execution of the waiver of process, which waiver was subsequently filed in the court record, constituted an appearance by Hartford, entitling it to notice under Rule 55. The court cannot agree.

■ Hartford has pointed to no case holding that a waiver of process constitutes an "appearance," but by the same token, neither has the court uncovered any case specifically holding that it does not. However, there are numerous cases which do clearly hold that the act or acts claimed to constitute an "appearance" for purposes of Rule 55 must be not only "responsive to plaintiff's formal action in court" but also must be such as would be "regarded as sufficient to give plaintiff a clear indication of defendant's intention to contest the claim." *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir.1996). In other words, "an appearance is an indication 'in some way [of] an intent to pursue a defense.'" *Id.* (quoting *United States v. McCoy*, 954 F.2d 1000, 1003 (5th Cir.1992)); *see also Sun Bank of Ocala v. Pelican Homestead & Savings Assn.*, 874 F.2d 274 (5th Cir.1989) (same); *Baez v. S.S. Kresge Co.*, 518 F.2d 349, 350 (5th Cir.1975) (not enough that plaintiff would know that defendant planned to contest suit; rather, defendant must take some responsive action be-

fore it will be deemed to have appeared in the case). In the court's opinion, by merely executing a document agreeing to waive service of process, defendant was not in any way "responding" to the lawsuit, and was certainly not indicating to the plaintiff that it intended to pursue a defense. Accordingly, plaintiff was not required to provide Hartford with notice, nor was the court required to have ensured that notice was provided prior to entering the default judgment. It follows that the lack of notice to Hartford is no ground for relief from the default judgment.

■ Hartford next contends that even if it cannot secure relief from judgment due to the lack of notice, the default judgment still should be set aside because Hartford's failure to respond to the plaintiff's complaint was due to no fault of its own and clearly was not willful or culpable, because plaintiff will not be prejudiced if the requested relief is granted, and because it has a meritorious defense to the action. The Fifth Circuit has repeatedly said that the courts generally look at three factors when ruling on a motion to set aside a default judgment under Rule 60(b): "the extent of prejudice to the plaintiff; (2) the merits of the defendant's asserted defense; and (3) the culpability of the defendant's conduct." *Federal Sav. & Loan Ins. Corp. v. Kroenke,* 858 F.2d 1067, 1069–70 (5th Cir.1988). At the same time, though, the court has explained, relative to factor (3), that "[t]o merit relief, a party must show that its failure to file a timely answer or otherwise defend resulted from justifiable neglect...." *Id.* (affirming denial of motion to set aside default judgment upon concluding that defendant's failure to answer due to an alleged informal extension and settlement negotiations between the parties did not constitute "excusable neglect"). In the case at bar, the court is not persuaded that Hartford's failure to answer resulted from justifiable neglect.

■ It is undisputed that Hartford's resident agent for service of process in Mississippi, Elizabeth Coleman, received the summons and complaint and signed a waiver of service of process on behalf of Hartford on or about April 21, 1997, and promptly notified Susan Page, Senior Claims Examiner in Hartford's claims office in Atlanta, Georgia, advising that she had received the suit papers and was immediately sending them to Page in Atlanta. It is also undisputed that Coleman did, in fact, undertake to ship the papers to Page via Airborne Express; however, it appears that something went awry and the papers were never delivered by Airborne Express. In anticipation of receiving the papers and responding to the lawsuit, Page requested that Hartford's claims file relative to plaintiffs' claim—by that time a closed file—be retrieved from storage. But when she failed to receive the papers from Coleman, Page did nothing further toward appearing in the action or responding to the lawsuit, or even inquiring of Coleman as to the whereabouts of the suit papers.

There is no question but that process was properly served on Hartford and that Hartford, through Page, had actual notice of the lawsuit, and yet failed to plead or otherwise defend the action. And though Hartford maintains that its failure to file an answer or other responsive pleading was due "solely as a result of the failure of Airborne Express," that is not how the court views these facts.

In support of its position, Hartford has submitted an affidavit signed by Page in which she acknowledges that she was apprised of the lawsuit by Coleman, but she explains that because she had not previously known Coleman and was unaware that Coleman was Hartford's agent for service of process in Mississippi, and further because Hartford's claims office "receives numerous calls concerning lawsuits and complaints," she "would not have acted on a telephone call alone" but would have waited to respond until she actually received a copy of the complaint. In the court's opinion while Page certainly could reasonably take the position that Hartford could not respond to a complaint unless it first received a copy of that complaint, the plain fact is, Hartford was made aware of the complaint filed by plaintiff by its agent for process and yet made no effort to obtain a copy of the complaint from its agent or elsewhere when it was not timely delivered by Airborne Express. Moreover, to the extent that Page might be trying to suggest in her affidavit that she was unsure

of the veracity of the information provided by Coleman, there were certainly means available to Page by which she could have verified Coleman's status and confirmed the service of the complaint. Her failure to do so, or to otherwise follow through with Coleman when the suit papers were not received, was a calculated decision on her part and clearly does not constitute *excusable* neglect.

In many respects, this case resembles *Baez v. S.S. Kresge Co.*, 518 F.2d 349 (5th Cir.1975), in which the Fifth Circuit affirmed the lower court's refusal to grant relief from default judgment where the suit papers, though duly served on defendant's agent for service of process and thereafter transmitted to defendant's home office, were subsequently lost by the Postal Service when the home office mailed them to defendant's local counsel. The court observed that while local counsel never received the papers, "both Kresge's registered agent, and its home office, possessed the papers in ample time to prevent its own injury. The Postal Service, therefore, cannot be burdened with the full blame. We think rather minimal safeguards could and should have been established which would have prevented this loss." *Id.* at 350. Hartford attempts to distinguish *Kresge* on the basis that there, unlike here, the papers were received not only by the defendant's registered agent but also by the defendant's home office. In this case, however, while the defendant may not have had suit papers in hand at either its claims office or home office, it was explicitly made aware of the service by its own registered agent, who did have the papers in hand. And just as the court said in *Kresge*, there were obviously simple and readily available "safeguards"—i.e., motivation and a telephone—which would have prevented Hartford's loss. *See Insurance Co. of North America v. S/S Hellenic Challenger*, 88 F.R.D. 545, 548

(S.D.N.Y.1980) quoting *Greenspun v. Bogan*, 492 F.2d 375, 382 (1st Cir.1974) (liberal construction of Rule 60(b) in default context is " 'usually reserved for instances where error is due to failure of attorneys or other agents to act on behalf of their clients, not where the client's own internal procedures are at fault' "). In summary, then, the court concludes that the cause for Hartford's failure to answer or otherwise defend does not warrant the relief which Hartford now seeks.[1]

Hartford finally mentions in its brief that whereas the identity of the company which provided long-term disability insurance coverage to Entergy employees was Hartford Life and Accident Insurance Company, the plaintiff has obtained a default judgment against "ITT Hartford Life and Accident Company," a nonexistent company. Without citing any authority, Hartford suggests that this is a reason, independent of any other reason, for setting aside the judgment. Again, however, the court must disagree. It has been said that

> [a] mistake in the defendant's name—a misnomer—... may ... be disregarded where it is fairly certain that no prejudice has resulted to the defendant. Misnomer mistakes need not be treated as grounds for dismissal if intelligent persons can understand what was intended, or if the party intended to be served knows, or has good reason to know, that he has been proceeded against, or where an imprecisely designated defendant was fully apprised of the fact and nature of the action against it.

62B Am.Jur.2d Process § 84 (citing cases).[2]

For all of the foregoing reasons, the court will deny Hartford's motion, except that the court will grant Hartford certain limited relief from the judgment. Specifically, Hartford has objected that certain of the damages assessed against it by the court, namely the

---

1. Not that it need comment on the subject in light of its conclusion that Hartford has failed to demonstrate sufficient cause, i.e., "excusable neglect," for relief from the judgment, but the court would note that while it does not find that plaintiff would suffer any cognizable legal prejudice in the event Hartford's motion were granted, neither does it find particularly compelling Hartford's argument that it has a meritorious defense. While Hartford contends that plaintiff was not

disabled at the time he sought long-term disability benefits, Hartford omits to mention and fails to address certain relevant facts regarding the plaintiff's evidence of disability.

2. The court would note, too, that Hartford's co-defendant, the Plan, refers to Hartford in its submissions as "ITT Hartford Life and Accident Insurance Company."

$49,000 in damages for medical treatment, are not legally recoverable against it. The plaintiff has conceded the merit in Hartford's position, and the motion will be granted to the extent of the $49,000, plus any prejudgment interest on that amount.

*The Plan's Motion*

That brings the court to the Plan's motion to set aside the default judgment entered against it. The Plan offers three reasons which it contends warrant the relief it seeks: (1) the judgment is void; (2) the judgment is a product of mistake; and (3) the Plan's failure to answer and defend is attributable to excusable neglect. The court has considered each of the grounds for relief urged by the Plan and concludes that none has merit.

■ The Plan's contention that the judgment is void and should therefore be set aside because Mississippi is not a proper venue for this litigation according to ERISA's special venue provisions is patently without merit, for notwithstanding the Plan's—and apparently plaintiff's—apparent comprehension of the law on this subject, the Supreme Court has made it quite clear that if a party is in default by failing to appear or file a responsive pleading, defects in venue are waived and the judgment may not be thereafter attacked for improper venue. *Hoffman v. Blaski,* 363 U.S. 335, 343, 80 S.Ct. 1084, 1089, 4 L.Ed.2d 1254 (1960);

*Commercial Casualty Ins. Co. v. Consolidated Stone Co.,* 278 U.S. 177, 180, 49 S.Ct. 98, 99, 73 L.Ed. 252 (1929); *see also Williams v. Life Savings and Loan,* 802 F.2d 1200, 1202 (10th Cir.1986).[3] Thus, while the court is not persuaded by the Plan's arguments that Mississippi is not a proper venue, the court need not reach that conclusion for at this stage in the proceedings, the propriety of venue is immaterial.[4]

■ The Plan next submits that the judgment is "void" and must be set aside because the plaintiff failed to properly effect service of process. Rule 4(e)(1) of the Federal Rules of Civil Procedure provides for service "pursuant to the law of the state in which the district court is located, or in which service is effected, for the service of a summons upon the defendant in an action brought in the courts of general jurisdiction of the State." Pursuant to this provision, plaintiff herein served process on the Plan in accordance with the method prescribed by Rule 4(c)(5) of the Mississippi Rules of Civil Procedure, which states that "a summons may be served on a person outside this state by sending a copy of the summons and of the complaint to the person to be served by certified mail, return receipt requested." The comments to this rule make clear that this method of service "is not available to serve a person

**3.** Both the Plan and the plaintiff have devoted much of their briefing efforts to establishing whether or not Mississippi is a proper venue for this lawsuit under ERISA's venue statute. And the Plan, presumably attempting to justify these efforts, has directed the court to two cases which it contends stand for the proposition that defects in venue are grounds for setting aside default judgments. However, neither case supports the proposition for which it is cited. *Orgeron v. Moran Towing Corp.,* No. 93–4164, 1994 WL 462995 (E.D.La. Aug. 22, 1994), did not involve a default judgment but instead considered only a motion to dismiss for improper venue, and the court in *Broadcast Music, Inc. v. M.T.S. Enterprises,* 811 F.2d 278, 281 (5th Cir.1987), held that a lack of personal jurisdiction—*not venue*—is such a defect as would require relief from a default judgment.

**4.** The venue issue raised by the Plan is whether ERISA's provision for venue "where the defendant resides or may be found" includes any district wherein personal jurisdiction over defendant may be exercised, or whether it is limited to

where defendant actually resides. In *Varsic v. United States District Court for the Central District of California,* 607 F.2d 245, 248 (9th Cir. 1979), the court concluded that it included anywhere personal jurisdiction may be obtained. In its brief to the court, the Plan asserts that the Fifth Circuit in *Woodfork v. Marine Cooks & Stewards Union,* 642 F.2d 966 (5th Cir.1981), "declin[ed] to adopt *Varsic* as the law of the 5th Circuit." In fact, however, the court in *Woodfork* said only that "[s]ince this venue issue has not been briefed on this appeal, ... we do not at this time determine if *Varsic* states the law of our circuit." The court did *not* decline to adopt *Varsic,* as the Plan represents. And though the Fifth Circuit still has not ruled on this issue, most courts which have considered the issue have adopted the view of the *Varsic* court, including three district courts within the Fifth Circuit. *See Sanders v. State Street Bank and Trust Co.,* 813 F.Supp. 529 (S.D.Tex.1993), *Nieves v. Houston Indus.,* 771 F.Supp. 159, 161 (M.D.La.1991), and *Wallace v. American Petrofina, Inc.,* 659 F.Supp. 829 (E.D.Tex.1987).

within the state." The Plan asserts that even though the Plan, or the administrator, may not have been "present" within the state as that term is understood in the personal jurisdiction context, it was "present" in the state for *service of process* purposes since it had a registered agent for service of process in Mississippi. The court, however, is not persuaded by the Plan's argument and concludes that the method of service employed by plaintiff was proper to accomplish effective service of process.[5]

The Plan next argues that, even assuming service of process was technically proper, since it has demonstrated "excusable neglect" for its failure to answer plaintiff's complaint, then its motion for relief from the judgment should be granted. However, the court cannot accept the Plan's assertion that there was "excusable neglect" involved in its failure to answer. The Plan's explanation of its claim of excusable neglect is provided by John D. Fricke, an Entergy Services, Inc. (ESI) assistant general counsel, who explains by affidavit that typically, most lawsuits against the Plan have named ESI as a defendant and have involved service of process on ESI's registered agent for service of process, and that in fact, this case represents the first in which the plan administrator was directly served with process. He continues, stating:

> [T]he Plan Administrator is routinely served with subpoenas and other legal process. Upon receipt of such documentation, the Plan Administrator forwards it to the Legal Department, where the matter is then referred to the appropriate attorney.
>
> Despite this routine practice, legal counsel was not aware of the existence of plaintiff's summons and complaint. Although the Plan Administrator properly forwarded plaintiff's summons and complaint, along with the internal Benefits Department file to the Legal Department, the documents

contained in the internal Benefits Department file were on top of the complaint and summons when the file folder was transmitted to the Legal Department. Staff personnel opened the materials, but the fact that a summons and complaint were included therein was not readily apparent because the complaint and summons were beneath the claim documentation. The materials were mistaken as an internal appellate file, which was pending resolution by Hartford.

Though the Plan criticizes the method of service employed by plaintiff, suggesting time and again throughout its brief that the unreliability of this service method is somehow to blame for its failure to respond, it is clear that the oversight identified by Fricke was not in any manner caused by or related to "the method of service chosen by Plaintiff's counsel." The Plan admits that the suit papers were not only received by defendant but were even forwarded to the correct department—the Legal Department—for response. The "fault" which the Plan seeks to attribute to plaintiff lies solely with the defendant, which plainly and simply lost or overlooked the relevant papers. This is not excusable neglect. *See Insurance Co. of North America v. S/S Hellenic Challenger,* 88 F.R.D. 545 (S.D.N.Y.1980) (adjuster's loss of summons and complaint did not constitute excusable neglect).[6]

As with Hartford, the Plan's final argument is that the expenses for medical treatment awarded by the court are not legally recoverable by plaintiff against the Plan, which provides no medical benefits but only long-term disability benefits. Having considered the parties' arguments on this issue, the court agrees that the default judgment should be vacated to the extent of the $49,000 awarded for such expenses, including the amount of prejudgment interest calculated on that sum.

---

5. The court would note, too, that the plan summary identifies the plan administrator as "the Employee Benefits Committee, Entergy Services, Inc., 639 Loyola Avenue, New Orleans, LA 70113," and states that the plan administrator is "the agent for service of legal process."

6. As with Hartford, the court would note that while it perceives no prejudice which plaintiff

would suffer were relief granted to the Plan, the court is not persuaded that the Plan's proffered "meritorious defense," even if arguably meritorious, should warrant relief. The only defense identified by this defendant is plaintiff's failure to exhaust his administrative remedies, a technical defense which ultimately has nothing to do with the merits of the case.

Based on the foregoing, it is ordered that defendants' motions are denied, except to the extent that the court will set aside that amount of the default judgment awarded for medical expenses and the prejudgment interest attributable to such expenses.