In the

# United States Court of Appeals

### For the Seventh Circuit

No. 01-1838

JOHN A. WAELTZ and HERBERT A. JOHNSON, JR.,

*Plaintiffs-Appellants*,

v.

DELTA PILOTS RETIREMENT PLAN,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 01 C 87—**Michael J. Reagan**, *Judge*.

ARGUED SEPTEMBER 20, 2001—DECIDED AUGUST 23, 2002

Before RIPPLE, KANNE and ROVNER, *Circuit Judges*.

RIPPLE, *Circuit Judge*. Plaintiffs John Waeltz, a retired Delta Airlines pilot, and Herbert Johnson, a current Delta pilot, brought this action against the Delta Pilots Retirement Plan ("the Plan") under Title I of the Employee Retirement Income Security Act of 1974 ("ERISA"). They sought to recover benefits allegedly due to Mr. Waeltz and to challenge the method that the Plan used to calculate benefit distributions. The Plan is administered in Atlanta, Georgia, and conducts all of its business there. Plaintiffs chose to lay venue, however, in the Southern District of Illinois. Upon motion by the Plan, the district court dismissed the action for improper venue. Mr. Waeltz and Mr. Johnson appeal

that dismissal. For the reasons set forth in the following opinion, we affirm the district court's dismissal for improper venue.

# I

# BACKGROUND

## A. Facts

Mr. Waeltz resided in the Southern District of Illinois from 1977 to December 2000; he then moved to Florida. He had worked as a pilot for Delta Airlines from 1970 until his retirement in 1997. Mr. Johnson resides in the Southern District of Illinois and has worked as a pilot for Delta Airlines since 1987. He has not yet retired. The Plan provides pension benefits for Delta pilots and is administered entirely in Atlanta, Georgia. Neither plaintiff has received any benefits in the Southern District of Illinois. The Plan has deposited Mr. Waeltz's monthly benefit payments into his account at the Delta Employees Credit Union in Atlanta, Georgia. Mr. Waeltz received some of his benefits in a lump sum distribution, which the Plan sent to Harris Trust Bank in Chicago, Illinois. *See* R.32, Supp. Affidavit of Leon A. Piper, ¶¶ 3-4. Mr. Johnson has not yet retired and therefore has received no benefits. Neither plaintiff has earned any benefits in the Southern District of Illinois because neither pilot has performed any work for Delta there. There is no work-related reason for pilots to live in the Southern District of Illinois. Mr. Johnson is currently based in Atlanta, Georgia.

## B. District Court Proceedings

The plaintiffs brought their action against the Plan in the United States District Court for the Southern District of Illinois. Pursuant to 28 U.S.C. §§ 1406(a) and 1404(a), the

Plan moved to transfer the case to the Northern District of Georgia. The Plan contended that the Southern District of Illinois was not a proper venue under 29 U.S.C. § 1132(e)(2), the venue provision governing actions brought under Title I of ERISA. The Plan also submitted that the Northern District of Georgia offered the most convenient venue to litigate the case because all of the Plan's documents and all witnesses associated with the Plan were located there and all of the events giving rise to the plaintiffs' complaint occurred there. At the hearing on the Plan's motion to transfer, the Plan amended its motion to ask the court to dismiss the case for improper venue if the court decided not to transfer the case to Georgia.

The venue provision of Title I of ERISA allows plaintiffs to lay venue "where the plan is administered, where the breach took place, or where a defendant resides or may be found . . . ." 29 U.S.C. § 1132(e)(2). Mr. Waeltz and Mr. Johnson contended that the Plan could "be found" in the Southern District of Illinois, either because the district court had personal jurisdiction over the Plan or because several plan participants lived in the district. The district court determined, however, that the authorities relied upon by the plaintiffs did not support either of their positions. Moreover, it pointed out that of the 2,740 retired Delta Airlines pilots, only two resided in the Southern District of Illinois, and of the two plaintiffs, only Mr. Johnson resided in the district, and he had not retired. Therefore, because the Plan carried on all of its business in Atlanta, because the plaintiffs had earned no benefits while in the Southern District of Illinois, and because neither plaintiff received any benefit payments in the Southern District of Illinois, the district court concluded that the Plan did not reside and could not "be found" in the Southern District of Illinois. Therefore, the court dismissed the case for improper venue.

## II

## DISCUSSION

This court ordinarily defers to a district court's venue determinations unless the district court has abused its discretion. *See Milwaukee Concrete Studios, Ltd. v. Fjeld Mfg. Co., Inc.*, 8 F.3d 441, 445 (7th Cir. 1993). When, as here, a case involves the statutory interpretation of a venue statute, however, and not the discretionary interpretation of disputed facts, this court reviews venue determinations de novo. *See id.*

Title 29, § 1132(e)(2) of the United States Code specifies where plaintiffs may bring actions under Title I of ERISA. It provides:

> Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found.

29 U.S.C. § 1132(e)(2). Mr. Waeltz claims only that, for the purpose of venue, the Plan "may be found" in the Southern District of Illinois.[1]

---

[1] In a one-sentence footnote in which he cites no authority, Mr. Waeltz states in his brief that the fact that he lived in the Southern District of Illinois when the Plan paid out an allegedly undervalued lump sum to his bank account in the Northern District of Illinois "arguably supports that the 'breach took place' in the Southern District of Illinois . . . ." Appellant's Br. at 15 n.5. We shall not consider this undeveloped argument. *See United States v. Berkowitz,* 927 F.2d 1376, 1384 (7th Cir. 1991) ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived . . . .").

## A.

We have not had occasion in our earlier cases to address the meaning of "may be found" in § 1132(e)(2) for purposes of venue.[2] Mr. Waeltz submits that, in determining venue, a defendant "may be found" in any district in which the defendant is subject to personal jurisdiction. He reasons as follows. Section 1132(e)(2) provides for nationwide service of process that simply requires minimum contacts with the United States as a whole. Therefore, the statute provides for nationwide personal jurisdiction, *see Board of Trustees, Sheet Metal Workers' Nat'l Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031, 1035 (7th Cir. 2000).[3] Because the defendant is

---

[2] This court has addressed the meaning of § 1132(e)(2)'s service of process provision ("and process may be served in any other district where a defendant resides or may be found"). *See Bd. of Trustees, Sheet Metal Workers' Nat'l Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031, 1035-37 (7th Cir. 2000) (holding that § 1132(e)(2) allows for nationwide service of process (and thus jurisdiction) and that the nationwide service of process provision "comports with the Constitution"). *Elite Erectors* did not determine, however, what it means to "be found" in a particular district. In that case, the pension fund was the plaintiff, and it laid venue where it was administered, the Eastern District of Virginia. *See id.* at 1033. The defendant, which was from Indiana, did not challenge the venue of the action. Instead, it defaulted, and when the pension plan filed an action in the Southern District of Indiana to collect on its default judgment, Elite Erectors contended that the Eastern District of Virginia had lacked personal jurisdiction. *See id.* The Southern District of Indiana agreed and considered the prior judgment void. We reversed on appeal, holding that the Eastern District of Virginia had had personal jurisdiction pursuant to the nationwide service of process clause and that the exercise of that jurisdiction was constitutional. *See id.* at 1035-37.

[3] Service of process is a prerequisite to a district court's exercise of personal jurisdiction over a defendant. *See Omni Capital Int'l, Ltd. v.*

(continued...)

³ (...continued)

*Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987); *Swaim v. Moltan Co.*, 73 F.3d 711, 719 (7th Cir. 1996). It is the mechanism "by which a court having venue and jurisdiction of the subject matter of the suit asserts jurisdiction over the person of the party served." *Omni Capital*, 484 U.S. at 104 (quoting *Miss. Publ'g Corp. v. Murphree*, 326 U.S. 438, 444-45 (1946)). Under the Federal Rules of Civil Procedure, the service of a summons upon a defendant is effective to establish personal jurisdiction over the defendant in certain situations. *See* Fed. R. Civ. P. 4(k)(1). Ordinarily, such service establishes a district court's personal jurisdiction only if a court of the state in which the district court sits would have personal jurisdiction over the defendant. *See* Fed. R. Civ. P. 4(k)(1)(A); *Janmark, Inc. v. Reidy*, 132 F.3d 1200, 1201 (7th Cir. 1997); *Cent. States, Southeast & Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 939 (7th Cir. 2000). Where, as here, the federal statute creating the cause of action prescribes its own rules for service of process, however, the Federal Rules provide that service made according to the statute is effective to establish personal jurisdiction over the defendant, regardless of whether a court of the state encompassing the federal district could exercise personal jurisdiction over the defendant. *See* Fed. R. Civ. P. 4(k)(1)(D); *Reimer Express*, 230 F.3d at 941-42 ("Rule 4(k)(1)(D) provides for jurisdiction whenever a statute explicitly authorizes service of process."); *Peay v. Bellsouth Med. Assistance Plan*, 205 F.3d 1206, 1210 (10th Cir. 2000) ("When a federal statute provides for nationwide service of process, it becomes the statutory basis for personal jurisdiction." (internal quotation marks omitted) (citing Fed. R. Civ. P. 4(k)(1)(D))). A district court's exercise of personal jurisdiction over a defendant is constitutional, notwithstanding a complete lack of contact between the defendant and the forum district, so long as the defendant has sufficient contacts with the United States as a whole. *See Elite Erectors*, 212 F.3d at 1035-37; *United Rope Distrib., Inc. v. Seatriumph Marine Corp.*, 930 F.2d 532, 534 (7th Cir. 1991). *See generally* Jason A. Yonan, Note, *An End to Judicial Overreaching in Nationwide Service of Process Cases: Statutory Authorization to Bring Supplemental Personal Jurisdiction within Federal Courts' Powers*, 2002 U. Ill. L. Rev., 557, 559-62. Thus, any district court in which a plaintiff

(continued...)

subject to jurisdiction throughout the United States, it "may be found" throughout the United States and venue is proper in whatever district court assumes jurisdiction. We turn now to an evaluation of this argument.

In interpreting the statute, we look first to the language of the statute itself. *See Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980); *Milwaukee Concrete Studios*, 8 F.3d at 445. Nothing in the language of § 1132(e)(2) suggests the construction urged by Mr. Waeltz. Most notably, the construction that he urges would render superfluous the other clauses of ERISA's venue provision. To allow venue wherever personal jurisdiction exists would allow nationwide venue, because § 1132(e)(2)'s nationwide service of process clause creates nationwide jurisdiction. If such were the intent of Congress, there would have been no reason for Congress to provide specifically for venue where a plan is administered or where a breach took place. *See*

---

[3] (...continued)
brings an action under Title I of ERISA will have personal jurisdiction over the defendant, if the defendant is properly served under § 1132(e)(2) and has sufficient contacts with the United States. Of course, it may be that sufficient contacts will exist whenever a defendant is served within the United States. *See Lorelei Corp. v. County of Guadalupe*, 940 F.2d 717, 719 (1st Cir. 1991) ("[S]ufficient contacts exist whenever the defendant is served within the sovereign territory of the United States."). If that is the case, proper service according to § 1132(e)(2) will always establish personal jurisdiction, because the defendant must be in the United States to be properly served under § 1132(e)(2). *See Reimer Express*, 230 F.3d at 941 ("The RICO and ERISA service of process provisions state that service may be made in 'any district,' which indicates that Congress authorized service only in the judicial districts of the United States and not worldwide."); *see also Stauffacher v. Bennett*, 969 F.2d 455, 460-61 (7th Cir. 1992) (holding that RICO's nationwide service of process provision did not authorize service outside the United States).

*McFarland v. Yegen*, 699 F. Supp. 10, 14 (D.N.H. 1988). As this court often has stated, "we are loathe to adopt constructions that render a statutory provision superfluous." *Kopec v. City of Elmhurst*, 193 F.3d 894, 902 (7th Cir. 1999); *see Gendron v. United States*, 154 F.3d 672, 674 (7th Cir. 1998); *In re Lifschultz Fast Freight Corp.*, 63 F.3d 621, 628 (7th Cir. 1995).

Moreover, in the general federal venue statute, Congress has defined the word "resides," in terms of a defendant's amenability to personal jurisdiction, *see* 28 U.S.C. § 1391(c). By contrast, it has never defined the clause "may be found" in those terms. Indeed, Congress' equating "resides" with a defendant's amenability to personal jurisdiction in the general venue statute suggests strongly that Congress did not intend the "may be found" clause to carry such meaning here.[4]

Nor do we believe that Mr. Waeltz can find support for his reading of the phrase "may be found" from the leading case interpreting § 1132(e)(2)'s venue provision, *Varsic v. United States District Court for the Central District of California*, 607 F.2d 245 (9th Cir. 1979). In *Varsic*, the Ninth Circuit rejected the contention that a fund could be found only where it was administered. *See id.* at 248. Judge Wallace noted that Congress did not intend to restrict venue, but to create a liberal venue provision "to remove jurisdictional and procedural obstacles which in the past appear to have hampered effective enforcement of fiduciary responsibilities under state law for recovery of benefits due participants."

---

[4] *Cf. Omni Capital*, 484 U.S. at 106 (failure to authorize nationwide service of process for particular cause of action under the Commodity Exchange Act after Congress authorized such process for other causes of action under the same act "argues forcefully that such authorization was not its intention").

*Id.* at 247-48 (quoting the report of the House Committee on Education and Labor, H.R. Rep. No. 93-533, at 17 (1973), *reprinted in* 1974 U.S.C.C.A.N. 4639, 4655). The court found it significant that the term "found" had been construed liberally when used in other venue provisions. For example, the Fifth Circuit interpreted the term "found" in the antitrust venue provision, 15 U.S.C. § 15, to allow venue in a district in which a defendant " 'continuously carries on any substantial part of its activities . . . .' " *Varsic,* 607 F.2d at 248 (quoting *Braun v. Berenson,* 432 F.2d 538, 544 (5th Cir. 1970)). Similarly, courts interpreting the copyright venue provision, 28 U.S.C. § 1400(a), had concluded that a " 'corporation is "found" in any district in which personal jurisdiction might be obtained over it.' " *Id.* (quoting *Mode Art Jewelers Co. v. Expansion Jewelry Ltd.,* 409 F. Supp. 921, 923 (S.D.N.Y. 1976)). Thus, in light of § 1132(e)(2)'s legislative history and Congress' choice of the word, Judge Wallace concluded in *Varsic* that a defendant "may be found" in any district in which the defendant's contacts would be sufficient to support personal jurisdiction in that district over the defendant. *See id.* at 248-49.

Mr. Waeltz and Mr. Johnson insist that *Varsic* holds that a defendant "may be found" wherever personal jurisdiction exists over the defendant, regardless of whether that jurisdiction is premised upon the existence of "minimum contacts" with the districts in question. The court in *Varsic* did state, "if personal jurisdiction is properly asserted over the Fund, it is 'found' there." *Id.* at 248. That phrase ought not to be read out of context, however. Notably, Judge Wallace went on to consider whether the defendant fund's contacts with the district were "sufficient to satisfy the 'minimum contacts' test for personal jurisdiction." *Id.* at 248-49. Indeed, the defendant in *Varsic* had not challenged the personal jurisdiction of the district court. Thus, if the bare existence of personal jurisdiction was all that was required,

there would have been no reason for the court to consider the defendant's contacts with the district. Under *Varsic*, "may be found" is defined not in raw terms of whether personal jurisdiction exists on any basis whatsoever, but on whether the defendant has sufficient contacts with the particular district to support a conclusion that the defendant "may be found" there. *Accord I.A.M. Nat'l Pension Fund v. Wakefield Indus., Inc.*, 699 F.2d 1254, 1257 (D.C. Cir. 1983) ("The Ninth Circuit held [in *Varsic*] that Congress intended, by allowing venue wherever a defendant might be 'found,' to permit suit in any district where a defendant entity's contacts 'are sufficient to satisfy the "minimum contacts" test for personal jurisdiction' as defined by *International Shoe Co. v. Washington*." (citation omitted)); *McFarland v. Yegen*, 699 F. Supp. 10, 14 (D.N.H. 1988) (applying minimum contacts test to determine whether defendant may be found in district); *Turner v. C.F. & I. Steel Corp.*, 510 F. Supp. 537, 542 (E.D. Pa. 1981) (same); *Ballinger v. Perkins*, 515 F. Supp. 673, 676 (W.D. Va. 1981) (same); *Wallace v. Am. Petrofina, Inc.*, 659 F. Supp. 829, 832 (E.D. Tex. 1987) (same).

We believe that the decision in *Varsic* is correct. A fund can be found in a judicial district if it has the sort of "minimum contacts" with that district that would support the exercise of personal jurisdiction under the rule of *International Shoe Co. v. Washington*, 326 U.S. 310 (1945). This approach, we believe, is most compatible with the text and the structure of the statute as well as with the pattern that Congress took in formulating the general venue rule.[5]

---

[5] Mr. Waeltz also argues that the district court's opinion in *McCracken v. Auto. Club of S. Cal., Inc.*, 891 F. Supp. 559 (D. Kan. 1995), supports his construction of the "may be found" clause. *McCracken*, however, construed § 1132(e)(2)'s "resides" clause, not the "may be
(continued...)

## B.

Mr. Waeltz contends that the residence in the district of Plan participants constitutes sufficient contact of the Plan with the district to support the conclusion that the Plan "may be found" in the district. The record indicates that there are 2,740 retired Delta Airlines pilots and that only two live in the Southern District of Illinois, neither of whom are plaintiffs here. The mere residence in the district of two Plan participants out of 2,740, absent any other contact between the Plan and the district, does not justify the exercise of personal jurisdiction over the Plan under the minimum contacts approach of *Varsic* that we have endorsed today.

None of the cases that Mr. Waeltz cites support his contention that the mere presence in a district of participants in a retirement plan renders the plan "found" in the district. In each case, the court held that the defendant had sufficient contacts with the forum district to support venue, but in none of them was the mere residency of plan participants in a district considered a sufficient contact by itself to support a conclusion that the defendant could be found in the district. *See Jansen v. Greyhound Corp.*, 692 F. Supp. 1022, 1024 (N.D. Iowa 1986) (applying *Varsic*; defendant found in district where plaintiffs worked, where plaintiffs earned their benefits, and to which defendants sent plaintiffs' benefit checks); *Doe v. Connors*, 796 F. Supp. 214, 220-22 (W.D. Va. 1992) (sufficient contacts where defendant, a multiemployer bargaining group, represented coal mines in the forum district that employed the plaintiffs); *Wallace v. Am. Petro-*

---

[5] (...continued)
found" clause. *See id.* at 561-62. Mr. Waeltz claims only that a defendant "may be found" wherever it is subject to personal jurisdiction.

*fina, Inc.,* 659 F. Supp. 829, 832 (E.D. Tex. 1987) (applying minimum contacts test; defendant "found" in district from which contributions were sent to defendant, where plaintiff was employed, in which plaintiff received pension check, and in which effect of benefits cut back was felt); *Ballinger v. Perkins,* 515 F. Supp. 673, 676 (W.D. Va. 1981) (applying *Varsic*; defendant found in district in which defendant fund participated with plaintiff's union local, in which plaintiff made his contributions to the fund, and in which effect of benefit denial was felt).

We must conclude that the residence of only two Plan participants in the Southern District of Illinois, without more, does not constitute sufficient contact between that district and the Plan for the court to determine that the Plan may be "found" there for purposes of § 1132(e)(2). Therefore, because the Plan cannot be found in the Southern District of Illinois, the district court appropriately dismissed the case for improper venue.

### Conclusion

In accord with the decisions of the other circuits that have addressed the question, we hold that, for purposes of venue under the ERISA statute, 29 U.S.C. § 1132(e)(2), a defendant "may be found" in a district with which it has minimum contacts as that term has been employed in *International Shoe* and its progeny. The mere presence in a district of two participants in a retirement plan covering 2,740 retirees does not constitute sufficient contact between the district and the Plan to support a conclusion that the Plan "may be found" in the district. Therefore, because the Plan cannot be found in the Southern District of Illinois, the district court appropriately dismissed the case for improper venue.

Accordingly, the judgment of the district court is affirmed.

AFFIRMED

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

USCA-97-C-006—8-23-02